**Lamont WARREN, Plaintiff–Appellant,**

v.

**Joseph L. DWYER, Individually and in his Official Capacity as an Officer in the Police Dept. of Hartford, CT, Defendant–Appellee.**

**No. 1327, Docket 90–7013.**

United States Court of Appeals, Second Circuit.

Argued May 4, 1990.

Decided June 25, 1990.

John R. Williams (Williams and Wise, New Haven, Conn., Karen Lee Torre, of counsel), for plaintiff-appellant.

James J. Szerejko (Halloran & Sage, Hartford, Conn., Michael J. Gustafson, of counsel), for defendant-appellee.

Before KAUFMAN, FEINBERG and WINTER, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

In an appeal from a jury verdict exonerating the defendant in a civil rights action for damages flowing from false arrest, we are called upon to determine whether the district court's charge to the jury was of a kind requiring reversal. In particular, we are asked to assess whether the affirmative defense of qualified immunity is an issue appropriate for determination by a jury—or one solely for judicial disposition as a matter of law.

After less than twenty four hours of deliberation, the jury returned a verdict for the defendant by answering "no" to the question "Did Joseph L. Dwyer falsely arrest Lamont Warren?" In an earlier trial also conducted before Judge Clarie, a jury exonerated Officer Dwyer of claims of excessive force, racial discrimination, and intentional filing of a false police report, but was deadlocked on the false arrest claim,

voting five to one in favor of the defendant.

Warren claims the trial court committed reversible error by instructing the jury to consider, in determining the lawfulness of plaintiff's arrest, whether there was probable cause for an additional criminal charge imposed after plaintiff was seized and in custody. Appellant further contends that the district court erred by reversing its position in the initial trial and submitting the affirmative defense of qualified immunity to the jury for determination.

For the reasons below we affirm the judgment. Although we cannot determine conclusively whether the jury even considered the defense of qualified immunity in arriving at its verdict of no liability, the charge was at most redundant, but not so confusing as to constitute prejudicial error.

## BACKGROUND

The following facts are not in dispute. Lamont Warren, originally of Hartford, Connecticut, presently resides in Massachusetts, where he is employed as a computer analyst by an insurance company. On August 24, 1984, Warren drove with friends to Hartford to visit his relatives at his brother's residence on Huntington Street. At approximately midnight, Warren and his friends were en route to his automobile parked across the street, when they were approached and asked for identification by defendant-appellee Joseph Dwyer, an officer with the Hartford Police Department for almost two years at the time. Dwyer was responding to a radio dispatch reporting an unrelated burglary in progress at a neighboring Huntington Street residence. It is further undisputed that Warren's three companions produced drivers' licenses and remained silent while Dwyer verified their backgrounds over the radio, which revealed no information or prior arrests.

The parties sharply dispute, however, the circumstances which attended Warren's identification check. Warren testified at trial that he was frightened by Dwyer, who approached with his hand on his gun, demanded identification without explanation, and refused to answer Dwyer's inquiries of "What's going on?" and "What is wrong?" Warren claimed that he proffered his driver's license, but before accepting, Dwyer ordered him to lean against the police cruiser. After allegedly encircling and gazing at Warren for several moments, Dwyer arrested Warren for breach of peace and ordered him to sit in the back of the police car.

Officer Dwyer, on the other hand, testified that he promptly informed the group he was investigating a burglary and merely requested identification; his gun, he said, was concealed. He claimed Warren refused to give his name and instead stated that he knew many powerful black people, that he lived on Huntington Street, and was the brother of a Hartford police officer. Dwyer noted that Warren smelled of alcohol and characterized his behavior as loud, abusive and obscene. Dwyer stated that he warned Warren to calm down or risk arrest, yet Warren continued to "rant and rave," and used profane language. Dwyer maintained that he arrested Warren for breach of peace because his conduct was attracting a hostile crowd that might engender a hazardous condition in such a high crime neighborhood. Conn.Gen.Stat. § 53a–181.

After returning identifications to Warren's three companions and filling out a form for Warren's arrest, Dwyer drove to the end of Huntington Street where a police van was stationed. As Warren was transferred into the vehicle, he allegedly stated that he would "get" Dwyer. Dwyer, accordingly, recorded an additional charge for threatening in the police report. Conn.Gen.Stat. § 53a–62.

It is undisputed that Warren was then taken to the Hartford police station where he was booked, photographed, strip searched, and incarcerated for 8–9 hours before he was able to post bond. At his first appearance in Connecticut Superior Court, however, the prosecutor declined to prosecute and the judge dismissed both charges.

## DISCUSSION

■ It is basic law that a jury charge should be examined in its entirety, not scrutinized strand-by-strand. *Lowe v. Commack Union Free School Dist.*, 886 F.2d 1364, 1378 (2d Cir.1989). Generally, we will reverse the judgment of a trial court and grant a new trial because of an error in the jury instructions only if we are persuaded, based on a review of the record as a whole, that the error was prejudicial or the charge was highly confusing. *Nat'l R.R. Passenger Corp. v. One 25,900 Square Foot More or Less Parcel of Land*, 766 F.2d 685, 688 (2d Cir.1985); *Lowe*, 886 F.2d at 1378; *see* Fed.R.Civ.P. 61.

### A. *Probable Cause*

The trial court properly instructed the jury that at the time of the challenged arrest, under "clearly established" law in Connecticut, a police officer could lawfully make a warrantless arrest for a misdemeanor "only if the arresting police officer had probable cause to believe that the person was committing or had committed a criminal offense in the officer's presence." *See* Conn.Gen.Stat. § 54–1f(a); *State v. Elliott*, 153 Conn. 147, 152–53, 215 A.2d 108, 110–11 (1965). The court then defined probable cause and instructed the jury to consider its existence with respect to both charged offenses:

> So the questions you have to answer are whether Officer Dwyer had probable cause to believe that Mr. Warren was committing the offense of: One, breach of peace; and two, the second charge referred at the transfer to the paddy wagon, threatening in his presence.

After reading both statutes to the jury, the court further explained that the jury was not to determine whether the plaintiff actually committed either of these offenses but "whether the plaintiff's conduct was sufficient to justify a reasonable person in believing that there was reasonable ground for arresting the plaintiff for *either* breach of the peace *or* threatening." Upon the jury's request, the court later provided it with a "copy of the exact wording of the 'Breach of Peace'" statute.

On the second day of deliberations, Warren took exception to the court's instruction on the ground that the offense of "threatening" was added after he had been arrested—for breach of peace—and was in custody. Thus, plaintiff protested, the charge improperly permitted the jury to find for the defendant police officer if probable cause was lacking for the arrest provided there was probable cause for the subsequent charge of threatening. After hearing objections from Dwyer's counsel, the trial court agreed to reinstruct the jury "without doing harm to either side." The Court added:

> [The] statutes are in two parts. One is the breach of peace statute and the other is the threatening statute. I simply call your attention to the fact that the threatening charge was not added until plaintiff was under arrest and that threatening charge was added, according to the testimony.

■ We must determine on appeal whether the district court's clarification of its charge effectively removed any confusion from the jurors' minds as to which principles of law to apply to the facts they found. *Norfleet v. Isthmian Lines, Inc.*, 355 F.2d 359, 362–63 (2d Cir.1966). For the purpose of determining the lawfulness of an arrest, probable cause encompasses only that information available to the arresting official prior to and including the point of seizure. *Brinegar v. United States*, 338 U.S. 160, 170–78, 69 S.Ct. 1302, 1308–12, 93 L.Ed. 1879 (1949).

■ Warren contends that the trial court failed to cure its error and merely restated the evidence, reminded the jury of the sequence of events and told the jurors their "memory" would control. We might be inclined to agree with plaintiff's conclusion on a superficial reading of the record. The entire record, however, reveals that the court later clearly directed the jury to consider only whether there was probable cause for the breach of peace charge. When asked, in a note from the jury, for "a copy of the section ... pertaining to a false arrest but no liability," the court stated:

If you find by a preponderance of the evidence that the defendant Officer Dwyer did not have probable cause to believe that the plaintiff Lamont Warren was committing the criminal offenses of "breach of the peace" that does not end your inquiry.... [The] defendant may be entitled to ... qualified immunity.

Accordingly, no reasonable juror could have been mislead into believing that the existence of probable cause for the threatening offense was sufficient to reject plaintiff's claim of unlawful arrest.

While any attempt at reading the minds of the jurors in arriving at their verdict is an exercise in frustration, we may derive some comfort in knowing that the jury's focus on the breach of peace charge was substantial enough for it to request a copy of the actual statutory language. No similar request was made for the statute prohibiting threatening.

### B. *Qualified Immunity*

■ We now turn to Warren's assertion that the defense of qualified immunity should never have been sent to the jury.

After charging on false arrest, the district judge instructed the jury to consider the defense of qualified immunity if, and only if, it found that Warren had been unlawfully arrested. The jury was informed that the essence of its inquiry should be:

If the arrest was made without probable cause, then you may not impose liability ... [if] a reasonable police officer in Officer Dwyer's position would have found that probable cause did exist that Lamont Warren had committed or was committing the criminal acts for which he was arrested.

At Warren's insistence and Dwyer's acquiescence, however, the verdict form presented the sole question: "Did Joseph L. Dwyer falsely arrest Lamont Warren?" An alternative form which posed the additional question, if Warren was falsely arrested, then "would a reasonable person have found that probable cause to arrest Warren was present?" was not submitted to the jury.

Government officials performing discretionary functions are shielded from personal liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Even where the law is "clearly established" and the scope of an official's permissible conduct is "clearly defined," the qualified immunity defense also protects an official if it was "objectively reasonable" for him at the time of the challenged action to believe his acts were lawful. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987) (explaining *Harlow v. Fitzgerald*, 457 U.S. at 800, 102 S.Ct. at 2727); *Robison v. Via*, 821 F.2d 913, 920–21 (2d Cir.1987) (acknowledging three avenues of relief).

In addition, the defense has been construed as an immunity from suit, not a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985) (a right not to stand trial). Accordingly, the objective reasonableness standard was designed to facilitate resolution of the defense on a motion for summary judgment. *Id.* Moreover, a denial of immunity on a motion for summary judgment is immediately appealable, to the extent the interlocutory ruling hinges on an issue of law. *Id.* at 527–30, 528 n. 9, 105 S.Ct. at 2816 n. 9 (emphasizing that the only appealable issue is the purely legal question "whether the facts alleged ... support a claim of violation of clearly established law").

Pre-trial resolution of the defense, however, may be thwarted by a factual dispute or require further discovery, *see, e.g., White v. Frank*, 855 F.2d 956, 958, 962 (2d Cir.1988). Courts thus have permitted the defense to be raised at the close of plaintiff's evidence on a motion for a directed verdict, and even on a subsequent motion for judgment notwithstanding the verdict. *Krause v. Bennett*, 887 F.2d 362, 365 (2d Cir.1989).

In the instant case, Dwyer neither raised the defense of qualified immunity in a pre-trial summary judgment motion to dismiss nor moved for a directed verdict at the close of the evidence at trial. Rather, over Warren's repeated objections, the district judge instructed the jury on the affirmative defense, as pleaded in Dwyer's answer to the amended complaint.

Generally, we first would determine whether it was error for the trial court to send the issue of qualified immunity to the jury. If it was, we would decide whether the error was prejudicial. *See Nat'l R.R. Passenger Corp. v. One 25,900 Square Foot More or Less Parcel of Land,* 766 F.2d at 688. On the instant record, however, it is unclear whether the jury even considered the immunity defense in reaching a verdict of no liability. On the verdict form, the jury answered in the negative only the question it was asked: whether Warren was falsely arrested. Nevertheless, there remains the possibility that the jury found, as appellant asserts, that there was no probable cause for Warren's arrest but that Dwyer was qualifiedly immune from liability. Faced with this uncertainty, we address only Warren's more limited claim that the instruction on immunity was so inherently contradictory that the charge as a whole was confusing.[1]

The essence of the district court's charge to the jury was first to determine whether "plaintiff's conduct was sufficient to justify a reasonable person in believing there was reasonable ground for arresting the plaintiff"; and, if not, the jury was to consider whether "a reasonable police officer ... would have found that probable cause did exist that [plaintiff] had committed, or was committing, the criminal acts

for which he was arrested." In effect, the jury was asked to consider the same question, the "reasonableness" of Officer Dwyer's arrest of Warren, from two perspectives: from the actual circumstances which it found as a matter of fact; and from any reasonable point of view, including even a factual misperception, the officer may reasonably have harbored at the time the events took place.

Within this framework, the question of immunity remains, as it should, distinct from the question of probable cause. *Mitchell v. Forsyth,* 472 U.S. at 528, 105 S.Ct. at 2816–17 (1985). For example, evidence might be sufficient to support a verdict that probable cause for an arrest was lacking under the actual circumstances as determined by the jury, without a showing it was unreasonable for an officer to mistake the existence of probable cause at the time. *See Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. at 3039 ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and ... should not be personally liable."); *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986) (immunity should be recognized where officers of reasonable competence could disagree on whether there was probable cause to support a warrant); *Melear v. Spears,* 862 F.2d 1177, 1187–88 (5th Cir.1989) (Higginbotham, concurring opinion) (suggesting use of special interrogatories).

In this case, Dwyer maintained that he grew concerned that a dangerous situation could erupt and arrested Warren when the plaintiff's words and actions began to draw the attention of others on the street. Un-

---

1. Moreover, we note that the thrust of appellant's argument against submitting the issue of qualified immunity to a jury is not genuinely implicated in this case. Contrary to appellant's assertions, the court did not ask the jury to determine what the law was on the date in question but expressly instructed the jury that, under "clearly established law," a person has a right not to be subjected to arrest without "probable cause to believe that the person was committing or had committed a criminal offense in the officer's presence." *Compare Stein v. Board*

*of City of New York,* 792 F.2d 13, 18 (2d Cir. 1986) (clearly established law on a particular issue is a question of law to be determined by the court) *and Alvarado v. Picur,* 859 F.2d 448, 451 (7th Cir.1988) (same) *with Calamia v. City of New York,* 879 F.2d 1025, 1036 (2d Cir.1989) (whether it was objectively reasonable for defendant to believe his conduct did not violate plaintiff's clearly established right "was a question to be answered by a properly instructed jury").

der the combination of instructions delivered by the district court, the jury was permitted to find that Officer Dwyer mistakenly but reasonably concluded that there was probable cause to arrest Warren for breach of peace. This accurately reflects the law.

■ Indeed, particularly in a case where the factual record is not in serious dispute, it may be difficult to separate the immunity issue from the merits. *See Mitchell v. Forsyth*, 472 U.S. at 545, 105 S.Ct. at 2825–26 (Brennan, concurring in part, dissenting in part); *Krause v. Bennett*, 887 F.2d at 365 (noting that whether a reasonable police officer would have believed probable cause existed for an arrest was also the "decisive factor" in the qualified immunity inquiry). As a result, instructing the jury on both issues may seem redundant. The better rule, we believe, is for the court to decide the issue of qualified immunity as a matter of law, preferably on a pretrial motion for summary judgment when possible, or on a motion for a directed verdict. If there are unresolved factual issues which prevent an early disposition of the defense, the jury should decide these issues on special interrogatories. The ultimate legal determination whether, on the facts found, a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide.

Accordingly, the instruction on qualified immunity was not so inherently contradictory that it was confusing to the jury.

## CONCLUSION

For the foregoing reasons, we affirm the judgment on the jury verdict below.

WINTER, Circuit Judge, dissenting:

I respectfully dissent.

I agree with my colleagues that the various instructions concerning the arrest for threatening do not warrant reversal, although I do so on harmless error grounds.[1]

I also agree with my colleagues that the ultimate decision regarding the qualified immunity defense is for the court. Their observations in that regard are of course dicta because the issue was given to the jury in the instant matter and appears to have been the ground for the jury's verdict for the defendant. *See* Note 1 *supra.* Nevertheless, the judgment is affirmed. I would reverse.

The principal area of my disagreement is over the nature of the qualified immunity defense. My colleagues perceive it as redundant of the probable cause issue, namely, whether the officer reasonably concluded that probable cause existed notwithstanding a factual misperception on his part.[2] However, although the probable cause and qualified immunity issues may overlap factually, they are very different legal issues with very different implications for the outcome in this case.

The purpose of the qualified immunity defense is to shield governmental officials

1. In none of its supplemental instructions did the district court tell the jury that it was rescinding an earlier incorrect instruction. The instructions were thus inconsistent, and I am reluctant to infer that the jury knew that the later instruction was intended as a correction of an earlier one. However, the fact that the jury asked for reinstruction on the qualified immunity issue indicates that in all probability it resolved the probable cause issue in favor of the plaintiff. The jury had been instructed that it need not reach the qualified immunity issue if it found that there was probable cause for the arrest. If the jury was following the court's instructions, therefore, its inquiry regarding qualified immunity indicated that it had found no probable cause for the arrest. Of course, if that is the case, the qualified immunity issue assumes central importance to the resolution of this appeal.

2. Even if my colleagues' view of the qualified immunity issue is correct, the judgment should be reversed because the instructions on that issue were confusing. The district court's instructions made no reference to the possibility of factual misperceptions or mistaken conclusions that are so central to my colleagues' analysis. Instead, it repeatedly made comments regarding legal predictability such as "If the defendant officer convinces you by a preponderance of the evidence that a reasonable officer could not have been expected to know that such actions violated the U.S. Constitution, then you would return a verdict for the defendant." Given the record in this case, I do not believe a jury could rationally implement those instructions because neither party argued legal predictability to it.

from liability where their conduct "could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The issue appears to arise in two categories of cases. In the first category, the conduct of the official impinges on a claimed constitutional right but the status of that right is ambiguous under existing law. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In the second category, the right is established—here the right to be free of arrest absent probable cause—but is so highly generalized that its application in particular factual situations is subject to doubt. *See Anderson v. Creighton,* 107 S.Ct. at 3038–40. As I perceive it, the qualified immunity issue in the present case is whether, given the elasticity of the concept of probable cause and the area of discretion left to the jury in applying that concept, a competent police officer would have known that Dwyer's conduct on the night of the arrest was illegal.

This issue seems preeminently a matter for the court rather than for the jury. It is in essence a legal decision whether, on the basis of the law as it existed at the time of the particular incident, the lawfulness of the officer's conduct was reasonably clear or was a matter of doubt. Juries are hardly suited to make decisions that require an analysis of legal concepts and an understanding of the inevitable variability in the application of highly generalized legal principles. Moreover, such an analysis would seem to invite each jury to speculate on the predictability of its own verdict.

A major difficulty, of course, is that the court ruling on the qualified immunity issue must know what the facts were that the officer faced or perceived, and the finding of those facts appears to be a matter for the jury. This is the factual overlap referred to above, presumably to be handled by the framing of special interrogatories.

Turning to the present case, the qualified immunity question is entirely resolved depending upon which version of the facts is accepted. On the one hand, Warren testified that Dwyer accosted him with his hand on his gun and thereafter arrested him for breach of the peace although Warren had done nothing but ask "What's wrong?" and "What is going on?". On the other hand, Dwyer testified that Warren was loud and abusive, ranted and raved and was creating enough of a fuss that Dwyer was fearful of a hostile crowd congregating.

If Warren's version of the facts is accepted by the trier of fact, then there certainly was no probable cause because Warren had done nothing remotely criminal. Because the law was at the time clear that no probable cause existed under Warren's version, a qualified immunity defense would fail as a matter of law. As to Dwyer's version, if the jury found that Dwyer was reasonable in his evaluation of Warren's conduct and in believing that that conduct might lead to the creation of a hazardous condition, probable cause for the arrest existed. The qualified immunity defense would never be reached.

In my view, therefore, the qualified immunity defense was either excluded as a matter of law or irrelevant. Nevertheless, the district court not only instructed the jury on the defense but essentially said that it could find for the defendant on that defense even if it accepted Warren's version of the facts. That was error, and I would therefore reverse.