**Michael RINALDI, Plaintiff,**

v.

**The CITY OF NEW YORK and Police Officer Jose Hernandez, Defendants.**

**No. 88 Civ. 4637 (PNL).**

United States District Court,
S.D. New York.

July 6, 1990.

**2.** That the complaint contained this allegation was not called to our attention at the oral argument.

### MEMORANDUM AND ORDER

LEVAL, District Judge.

Defendants, The City of New York ("the City") and Police Officer Jose Hernandez, move for partial summary judgment dismissing plaintiff's claims against Hernandez for civil rights violations under 42 U.S.C. §§ 1983 and 1985, and dismissing plaintiff's state law claims against both defendants for malicious prosecution and wrongful arrest and imprisonment.

### Background

This action arises out of the arrest by defendant Hernandez of plaintiff, Michael Rinaldi, on July 16, 1987. Rinaldi was charged with reckless endangerment, assault, and disorderly conduct. The charges against him were later dropped. Rinaldi brought suit against Hernandez and the City alleging wrongful arrest and imprisonment, malicious prosecution, violation of his civil rights, assault and battery, and negligent and intentional infliction of emotional distress. Hernandez counterclaimed for assault and battery.

The facts leading up to Rinaldi's arrest are disputed. Plaintiff, a competitive body builder and model, alleges that he was driv-

ing north on the Henry Hudson Parkway, and was approaching the toll booth at the north end of the Parkway, when Hernandez pulled his motorcycle directly in front of plaintiff's truck, nearly causing a collision. Plaintiff beeped his horn. Hernandez got off his bike, approached the truck, and asked, "What's your problem?" Rinaldi responded that he did not have a problem, but had beeped to let Hernandez know that the officer had nearly caused an accident. Hernandez allegedly responded, "I can do anything I want. I'm a cop." Rinaldi said he would proceed and "pay the toll now," and started to put his truck in reverse to back away from Hernandez' motorcycle. Hernandez put his hand on his gun and told Rinaldi to pull over after paying the toll. Rinaldi did so. Hernandez asked for Rinaldi's license and registration and, after checking them for roughly 15 minutes, returned with two tickets for Rinaldi, one for tailgating and the other for unauthorized use of the horn. Hernandez explained that the tickets were "for you being a tough guy with your big arms, and for beeping at me." Rinaldi said he had done nothing wrong, and asked what his arms had to do with anything. A verbal altercation ensured, with Hernandez calling Rinaldi a "tough guy," Rinaldi calling Hernandez a "spic," and Hernandez responding, "your mother." Eventually, Rinaldi started his truck and continued north, traveling approximately 55 m.p.h. Rinaldi Deposition at 5–14.

Soon afterwards, Rinaldi noticed Hernandez following him on his motorcycle. Hernandez pulled up on the right side of the truck, then in front, and then to the left. He then allegedly pulled his gun out of his holster and pointed it at Rinaldi, with "a big smile on his face." Believing that Hernandez was mentally unbalanced and fearful that the officer intended to shoot him or his truck, Rinaldi grabbed some pennies and threw them out the truck window at Hernandez, and "sped down the highway to get away." At the Saw Mill River toll booth, Rinaldi slowed down. Hernandez approached the truck and ordered Rinaldi out. Rinaldi refused, saying "there is something wrong with you. I don't know

... what you have against me." Rinaldi moved the truck a little closer to the toll booth. At this point, Hernandez allegedly pulled his gun, held it to Rinaldi's head, and cocked the hammer. Rinaldi pushed the gun away and got out. Hernandez ordered Rinaldi onto the ground. Rinaldi told him he would go along to jail "but you are not going to handcuff me," because he was afraid to be completely at Hernandez' mercy. Hernandez aimed the gun at Rinaldi again and said, "I'm going to put a bullet in you. I want to put a bullet in you. I'd love to put a bullet in you." Rinaldi got down on the floor. Hernandez handcuffed him, allegedly so tightly that it lacerated the skin on Rinaldi's wrists. By this time, approximately eight other police officers had gathered. Hernandez and the other officers allegedly then starting pushing the handcuffed Rinaldi from one policeman to another, swearing at him, and taunting him by calling him "tough guy" and "Hercules, Rambo, Muscles," and saying, "What are you going to do now, you're handcuffed" and "Come on and fight me [now]." Eventually, Hernandez took Rinaldi to a waiting police car and put him in the back seat. Hernandez then hit Rinaldi in the face with the back of his hand, making Rinaldi's nose bleed. Rinaldi was driven to the precinct by other officers. Rinaldi Deposition at 14–21; *see also* Rinaldi Affidavit at ¶¶ 7–8 (testimony at Comptroller's hearing, April 22, 1988).

Hernandez disputes plaintiff's version of these events. He contends that Rinaldi first came to his attention near the Henry Hudson Toll Plaza by tailgating directly behind Hernandez' motorcycle and continuously sounding his horn. Hernandez approached Rinaldi to see if Rinaldi was requesting police assistance. When told that Rinaldi was simply in a hurry to continue on his way, Hernandez directed Rinaldi to pull over and then issued him two traffic summons. Rinaldi yelled profanities and became disorderly. When Hernandez returned to his motorcycle, which was parked directly behind Rinaldi's truck, Rinaldi put the truck in reverse and accelerated, almost hitting Hernandez. Rinaldi then fled

in his truck at a speed exceeding 70 m.p.h. Hernandez followed with his emergency lights and siren activated, and shouted to plaintiff to pull over. Rather than pulling over, Rinaldi hurled debris from his car at Hernandez and accelerated further. Rinaldi continued to drive recklessly, making unsafe lane changes and tailgating other cars. When Hernandez caught up with Rinaldi at the Saw Mill Parkway Toll Plaza, he immediately approached Rinaldi and informed him he was under arrest. Rinaldi accelerated his truck away from Hernandez. Hernandez approached Rinaldi again, and Rinaldi again accelerated away from him. When Hernandez approached Rinaldi for the third time, Rinaldi veered his truck into Hernandez, striking and knocking him to the ground. Hernandez rose and told Rinaldi to get out of the truck. Rinaldi said he would not and cursed. Hernandez then attempted to pull Rinaldi out of the truck, but Rinaldi resisted. Hernandez managed to pull Rinaldi out, but Rinaldi then assumed a fighting stance and told Hernandez he would not permit handcuffs to be put on him. Rinaldi attempted to get back into the truck. At this point, Hernandez pulled his service revolver, and told Rinaldi he was under arrest. This time Rinaldi complied, and Hernandez cuffed him and handed him over to other officers for transport to the precinct. At the precinct, Hernandez read Rinaldi his Miranda warnings. Hernandez then left the precinct to seek medical attention. Hernandez Affidavit at 2–7. The felony complaint against Rinaldi was sworn to by an officer other than Hernandez because Hernandez was at the hospital. According to defendants, the charges against Rinaldi were ultimately dropped because Hernandez failed to substitute a personal affidavit within the required time. Defendants Memorandum of Law at 22–23.

Defendants now move for summary judgment dismissing Rinaldi's § 1983 and § 1985 claims against Hernandez, on the grounds of qualified immunity. Defendants also move for summary judgment on Rinaldi's state claims for malicious prosecution and wrongful arrest and imprisonment, on the grounds that probable cause existed for Rinaldi's arrest.[1]

## Discussion

On a motion for summary judgment, the moving party must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. § 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating that there is no material issue of fact standing in the way of judgment, or in other words, that there is an "absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If this showing is made, the non-moving party "must set forth arguments or facts to indicate that a genuine issue—not merely one that is colorable—of material fact is present." Gibson v. American Broadcasting Companies, Inc., 892 F.2d 1128, 1132 (2d Cir. 1989).

### A. Qualified Immunity from § 1983 Liability

The standard for qualified immunity from § 1983 liability is the objective reasonableness of the official action challenged in light of clearly established law. See Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In the context of a claim of unlawful arrest, the shield of immunity will be lost only when a reasonable police officer would not have believed that probable cause existed for the arrest—in other words, when the facts supporting a finding of probable cause are so weak as to "render official belief in its existence

---

1. Defendants' motion is at times styled as a motion to dismiss, and at times as a motion for summary judgment. Because defendants submit materials other than the pleadings, and submit pursuant to Local Rule 3(g) a statement of material facts as to which there is allegedly no genuine issue to be tried, I deem the motion properly to be one for summary judgment.

unreasonable." *Krause v. Bennett,* 887 F.2d 362, 368 (2d Cir.1989) (quoting *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1985)). *See also Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). The fact that charges against an arrestee are eventually dropped, or that he is acquitted after trial, has "no bearing on the determination of whether probable cause existed to arrest him." *Krause,* 887 F.2d at 370. Rather, probable cause for the arrest depends on whether the official has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989).

Thus, in *Krause v. Bennett,* 887 F.2d 362 (1989), the Second Circuit recently found an officer to have qualified immunity from a § 1983 claim regardless of evidence that the officer might have acted maliciously or in retaliation for prior lawful acts of the arrestee. The court reasoned that, whatever the subjective motivations of the officer in arresting Krause for possession of a stolen stop sign, the evidence indicated that the sign was indeed in Krause's possession, and therefore that an "officer of reasonable competence" would have found probable cause for the arrest. *Id.* at 371. The court noted that Krause might have a valid grievance against the officer under state law if he could show that the arrest was *subjectively* unreasonable—but that the officer was nonetheless immune from § 1983 liability because the arrest was *objectively* reasonable. *Id.* at 372.

Defendants contend that this case is like *Krause v. Bennett* because, even under plaintiff's version of the facts, probable cause existed to justify a reasonable officer in arresting Rinaldi for numerous traffic violations and other criminal acts. Defendants point out that Rinaldi admits to cursing Hernandez in public, to speeding in an attempt to avoid arrest, and to throwing coins at Hernandez from a moving vehicle. Rinaldi also admits that he refused to get out of his truck when Hernandez requested him to do so, and refused to be handcuffed until Hernandez drew his gun. Defendants argue that these admissions demonstrate that it was objectively reasonable for Hernandez to arrest Rinaldi at the Saw Mill Plaza, regardless of any prior acts Hernandez himself might have taken or of Hernandez' subjective motivations for making the arrest.[2]

▮▮▮ Rinaldi replies that a finding of qualified immunity on summary judgment is inappropriate because, if the facts are as plaintiff alleges, Hernandez did not have probable cause to arrest him.[3] Rinaldi ar-

---

**2.** Defendants contend that plaintiff's speed on the Mosholu Parkway constituted a violation of Vehicle and Traffic Law § 1180(b); plaintiff's refusal to pull over when Hernandez followed him and his refusal to exit the truck when told to do so constituted a failure to comply with a lawful command of a police officer in violation of Vehicle and Traffic Law § 1102; plaintiff's public swearing at Hernandez constituted disorderly conduct in violation of § 240.20 of the New York Penal Law; and plaintiff's act of throwing coins at Hernandez constituted the crimes of reckless endangerment and harassment under §§ 120.20 and 240.25(1) of the New York Penal Law. Police officers are authorized to make warrantless arrests for traffic infractions or penal offenses committed in their presence under § 155 of the Vehicle and Traffic Law and § 140.10(1)(a) of the Criminal Procedure Law, respectively.

**3.** Plaintiff also argues that defendants may not assert qualified immunity at this point because they failed to plead it as an affirmative defense in either their answer or their amended answer.

*See* Fed.R.Civ.P. Rule 8(c); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980) (qualified immunity is a defense which must be pleaded). Defendants argue that their third affirmative defense, asserting the good faith of Hernandez, sufficiently pleads the defense of qualified immunity. I find that, as a technical matter, the third affirmative defense does not plead qualified immunity. The existence of a good faith belief in the lawfulness of one's actions is irrelevant to the question of whether those actions were *objectively* reasonable, which the Supreme Court has determined to be the standard for qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (rejecting inquiry into subjective motivations).

However, I also find that defendants may raise qualified immunity on this motion for summary judgment, despite their failure to plead it properly as an affirmative defense, because plaintiff has not shown any significant prejudice from defendants' raising it at this time. This is not a case of unfair surprise;

gues that he had done nothing wrong until Hernandez began to threaten him, and that he was justified in taking the actions he did thereafter (speeding, throwing coins, etc.) to escape what he reasonably believed to be a serious threat to his life from Hernandez. Thus, Rinaldi points out, Hernandez first harassed him and ticketed him without cause at the first toll booth, calling him names and stating that "I can do anything I want. I'm a cop." Hernandez then followed his truck, dangerously veering from one side to the other, and finally pointed a gun at Rinaldi on the highway, while grinning at him wildly. Rinaldi stated that he took defensive actions at this point because he believed Hernandez might try to shoot him or shoot out his tires. For the same reason he at first resisted Hernandez' efforts to handcuff him at the Saw Mill toll booth—Hernandez had again pointed the gun at Rinaldi's head, and Rinaldi was afraid to be completely at Hernandez' mercy.

Rinaldi argues that this is not a case like *Krause* where the suspect's actions constituted an objectively reasonable basis for probable cause independent of the allegedly unlawful or overbearing behavior of the police officer. Here, the actions which gave rise to probable cause arguably would not have occurred but for the officer's improper conduct. Rinaldi argues that a finding of qualified immunity for Hernandez under these circumstances would be unjustified—allowing Hernandez to be protected from suit precisely because his actions were so extreme as to drive Rinaldi to equally extreme efforts at self-preservation.

■■■ I agree. It is clear that a suspect may not use force to resist arrest simply because the arrest appears to be unlawful.

*See* N.Y. Penal Law § 35.27 (codifying the so-called "no sock" rule); *People v. Simms*, 36 A.D.2d 23, 24, 319 N.Y.S.2d 144 (4th Dept.1971). On the other hand, the "no sock" rule does not override justification if the police engaged in an unprovoked attack or used excessive force. *See People v. Alston*, 104 A.D.2d 653, 480 N.Y.S.2d 115 (1984). Under New York law, an individual may be entitled to use force if he reasonably believes that it is necessary to prevent the imminent use of force against him by another person. *See* N.Y. Penal Law § 35.15. Likewise, an individual is entitled to engage in otherwise unlawful conduct (e.g., violating traffic ordinances), where he does so solely out of a well-founded fear of impending death or serious bodily harm from which there is no reasonable opportunity to escape. *See, e.g., United States v. Agard*, 605 F.2d 665 (2d Cir.1979) (duress and coercion are legal excuses for criminal conduct); *see also* N.Y. Penal Law § 35.05 (unlawful conduct justified where necessary as an emergency measure to avoid an imminent public or private injury).

■■■ Viewing the disputed facts of this case in a light most favorable to plaintiff, I cannot say that as a matter of law it would be impossible for a reasonable jury to conclude that Hernandez's allegedly abusive conduct was the sole cause of Rinaldi's actions, and that Rinaldi acted out of a reasonable and well-founded fear of death or serious bodily harm. If such a finding were to be made, it would appear inappropriate for Hernandez to be protected by qualified immunity, for all of the conduct which defendants claim gave rise to probable cause was in fact induced by the improper conduct of Hernandez. An officer may not drive a previously law-abiding citizen to extreme acts in defense of his life,

---

plaintiff could have expected that, in suing an individual police officer, the defense of qualified immunity would likely be raised. Moreover, plaintiff has had the opportunity to take discovery relevant to this issue and to present arguments rebutting the defense. *See* 5 Wright & Miller at § 1277 (1969) (courts frequently allow unpleaded affirmative defenses to be asserted on motion for summary judgment, even though the same defenses might not be permitted to be raised for the first time on motion to

dismiss). Because there is no discernible prejudice to plaintiff, I would likely have permitted defendants to amend their answer to plead qualified immunity had such an application been made. *Cf.* Fed.R.Civ.P. 15(a) (leave to amend pleadings should be liberally granted); *United States v. Continental Illinois Nat. Bank & Trust Co.*, 889 F.2d 1248 (2d Cir.1989) (court erred in not permitting defendant to amend answer to state an affirmative defense, where there was no surprise to plaintiff).

and then point to those very acts as evidence of the "objective reasonableness" of a subsequent arrest, justifying immunity for the officer from liability under 42 U.S.C. § 1983.

For these reasons, summary judgment on the issue of qualified immunity is denied. The issue of qualified immunity is preserved for trial.

B. *Claims for Malicious Prosecution and Wrongful Arrest and Imprisonment*

Defendants also move for summary judgment on plaintiff's state law claims for malicious prosecution and wrongful arrest and imprisonment, on essentially the same grounds as they move for summary judgment under § 1983. They argue that, even on plaintiff's version of the facts, probable cause existed for Rinaldi's arrest, and that the existence of probable cause bars these state law claims as a matter of law.[4] The motion is denied.

### Conclusion

For the reasons stated above, defendants' motion for partial summary judgment on plaintiff's claims under § 1983 and for malicious prosecution and false arrest and imprisonment are hereby denied.

SO ORDERED.

---

4. Thus, defendants argue, probable cause negates a necessary element of a cause of action for malicious prosecution—that the proceeding against a defendant be not only with actual malice but also without probable cause. *See Zanghi v. Incorporated Village of Old Brookville,* 752 F.2d 42 (2d Cir.1985); 59 N.Y. Jur.2d, False Imprisonment and Malicious Prosecution § 48, at 310–11 (1987). Likewise, defendants contend, probable cause is an affirmative defense to actions for wrongful arrest or imprisonment, because it vitiates a required element of these causes of action, that the arrest or confinement be without legal justification. *See Caban v. United States,* 728 F.2d 68, 71 (2d Cir.1984) (probable cause provides the legal justification for the confinement); *Broadaway v. City of New York,* 601 F.Supp. 624 (S.D.N.Y.1985) (same).