Joseph NACCARATO, Plaintiff,

v.

New York State Trooper William OLIVER, Defendant.

No. CV 93–1951.

United States District Court, E.D. New York.

April 19, 1995.

William Henry Harrison, Jr. & Associates by William Henry Harrison, T. Glenn Hoffman, Islip, NY, for plaintiff.

Dennis C. Vacco, Attorney General of the State of New York (Robert K. Drinan, Asst. Atty. Gen., of counsel), Axelrod, Cornachio & Famighetti by Brian J. Davis, Mineola, NY, for defendant.

### MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The plaintiff Joseph Naccarato (the "plaintiff" or "Naccarato") commenced this action under 42 U.S.C. § 1983, on or about April 30, 1993. Naccarato claimed that his rights under the Fourth Amendment were violated when he was arrested by the defendant William Oliver (the "defendant" or "Oliver"), who, at the time, was an off duty New York State Trooper. The arrest followed an altercation between the plaintiff and the defendant at the Alley Bar in Oneonta, New York on February 9, 1992.

At the time of the incidents giving rise to this law suit, the plaintiff, who is 6'4" tall and then weighed approximately 215 pounds, was working as a bouncer at the Alley Bar. The defendant police officer, who was not on duty at the time, was a patron who had just entered the bar. The defendant Oliver is 5'11" tall and weighed approximately 175 pounds at the time of the occurrence.

At the criminal trial in April, 1992, Naccarato was found not guilty of the crime of assault in the third degree. The plaintiff then brought this Section 1983 action, claim-

ing that his constitutional rights were violated by Oliver's alleged wrongful conduct, namely (1) false arrest, (2) use of excessive force during the arrest, and (3) malicious prosecution.

This case was tried before the Court and a jury on January 9, 1995 through January 17, 1995. On January 13, 1995, the jury rendered its verdict in chief and found that (1) Oliver did not have probable cause to arrest the Naccarato, (2) Oliver did have probable cause to commence or continue criminal prosecution of Naccarato and (3) Oliver did not use excessive force during the arrest. On the false arrest cause of action the plaintiff was awarded $5,000.00 in compensatory damages and $10,000.00 for legal fees. On January 17, 1995, in the second phase of the trial, the jury awarded the plaintiff $4,000.00 in punitive damages.

Following the verdict, the defendant moved the Court, pursuant to Fed.R.Civ.P. 50(b), for an order entering judgment in his favor as a matter of law on the ground that the doctrine of qualified immunity shields him from liability. On February 10, 1995, the Court rendered an oral decision granting the defendant's motion. In order to clarify the Court's oral decision, and because of the legal significance of the issues it addresses, the Court will now render a written opinion.

## DISCUSSION

**Motion for judgment as a matter of law**

A motion for a judgment as a matter of law, formerly known as a judgment notwithstanding the verdict, is governed by Rule 50 of the Federal Rules of Civil Procedure which states that:

[i]f during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim ... that cannot under the controlling law be maintained without a favorable finding on that issue.

Fed.R.Civ.P. 50(a)(1). Subsection (b) of Rule 50 states:

[w]henever a motion for judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.... If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law.

Fed.R.Civ.P. 50(b). At the close of the presentation of evidence in this case, the defendant moved for judgment as a matter of law on the ground that he was entitled to qualified immunity with regard to the plaintiff's Section 1983 claims. Decision was reserved at that time. The defendant then renewed that motion under Fed.R.Civ.P. 50(b) following the partial verdict in favor of the plaintiff.

In ruling on a motion for judgment as a matter of law the Court must view the evidence in the light most favorable to the nonmoving party, in this case the plaintiff. *Bradway v. Gonzales,* 26 F.3d 313, 317 (2d Cir.1994) (citing *Piesco v. Koch,* 12 F.3d 332, 343 (2d Cir.1993)). It is appropriate to grant such a motion only if the Court concludes, upon assessing credibility and inferences against the moving party, that a reasonable juror would have been compelled to accept the view of the moving party. *Id.* "The trial court 'cannot assess the weight of the conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury.'" *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 60 (2d Cir.1993) (quoting *Mattivi v. South African Marine Corp., Huguenot,* 618 F.2d 163, 167 (2d Cir. 1980)).

It is based upon these legal principles that the Court examines the defendant's motion for a judgment as a matter of law.

**The law of qualified immunity**

The Second Circuit recently discussed the subject of qualified immunity in a Section 1983 case in *Weaver v. Brenner,* 40 F.3d 527 (2d Cir.1994). Judge Cardamone enunciated the rule as follows:

The goal of § 1983 is to deter public officials from violating citizens' federal rights and to compensate victims of such official wrongdoing. The doctrine of qualified immunity weighs this important interest in citizens' civil rights against the policies of encouraging qualified persons to accept public positions and ensuring that public officials vigorously discharge their duties. The balance struck under the doctrine of qualified immunity has been formulated as a rule: public officials are immune from § 1983 civil rights suits brought by an aggrieved citizen when their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

It is not necessary that the questioned action have been previously held unlawful for the official to be held liable; rather, it is enough if the unlawfulness is apparent in light of pre-existing law. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).... Further, even when the right in question was clearly established at the time of the alleged unlawful conduct, an official is still entitled to immunity were it objectively reasonable for him to believe the conduct lawful. *See O'Neill v. Babylon*, 986 F.2d 646, 649 (2d Cir.1993).

*Id.* at 532.

With regard to a case of a police officer charged with false arrest and malicious prosecution:

Qualified immunity shields arresting officers from personal liability for damages 'insofar as their conduct does not violate clearly established statutory rights of which a reasonable person would have known,' *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights, *see Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). *See Golino v. New Haven* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992).

*Brown v. D'Amico*, 35 F.3d 97, 99 (2d Cir. 1994).

■ Unresolved factual issues bearing on the issue of qualified immunity should be decided by the jury on special interrogatories. *See Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir.), *cert. denied*, 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). But "[t]he ultimate legal determination whether, on the facts found, a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide." *Id.; see also King v. Macri* 993 F.2d 294 (2d. Cir.1993) (stating that it is "entirely proper" for the district court to submit disputed factual questions to the jury and reserve for itself the ultimate legal question of the availability of the qualified immunity defense). Judge Winter, dissenting on other grounds in *Warren, supra*, at 77, explained,

[i]t is in essence a legal decision whether, on the basis of the law as it existed at the time of the particular incident, the lawfulness of the officer's conduct was reasonably clear or was a matter of doubt. Juries are hardly suited to make decisions that require an analysis of legal concepts and an understanding of the inevitable variability in the application of highly generalized legal principles. Moreover, such an analysis would seem to invite each jury to speculate on the predictability of its own verdict.

(quoted with approval in *Finnegan v. Campeau Corp.*, 915 F.2d 824 (2d Cir.1990), *cert. denied*, 499 U.S. 976, 111 S.Ct. 1624, 113 L.Ed.2d 721 (1991)).

### The law of qualified immunity as applied to this case:

The plaintiff contends that qualified immunity should not be available to the defendant police officer in this case because the officer's own improper and unlawful conduct, laced by alcohol consumption, provoked the conduct for which the plaintiff was arrested. Naccarato cites *Rinaldi v. City of New York*, 756 F.Supp. 111 (S.D.N.Y.1990) as support for this argument.

The *Rinaldi* court held that qualified immunity did not shield the arresting officer from Section 1983 liability where the person arrested "acted out of a reasonable and well-founded fear of death or serious bodily harm" and was then arrested for those acts. *Id.* at 116. In *Rinaldi,* the defendant arresting officer drew his gun after ticketing the plaintiff for a traffic offense and later held the gun at the plaintiff's head. *Id.* The court concluded that the plaintiff's attempt to escape the officer and resist arrest, during which the plaintiff committed traffic violations and threw coins out of his car window at the officer, would not have occurred but for the officer's improper and abusive conduct. *Id.* *Rinaldi* noted that force in resisting arrest or other illegal conduct may be justified in certain situations, such as (1) where the police engage in an unprovoked attack or use excessive force, or (2) where it is undertaken solely out of a well-founded fear of impending death or serious bodily harm from which there is no reasonable opportunity to escape. *Id.* (citing *U.S. v. Agard,* 605 F.2d 665 (2d Cir.1979) and *People v. Alston,* 104 A.D.2d 653, 480 N.Y.S.2d 115 (2d Dep't 1984)).

In this Court's view there are important differences between the facts in this case and *Rinaldi.* Specifically, this was not a situation in which the officer's actions "were so extreme as to drive [the plaintiff] to equally extreme efforts at self-preservation." *Rinaldi,* at 116. Additionally, there is no doubt that the alleged attack by Oliver was not totally "unprovoked."

It was undisputed at the trial that at the outset of the altercation with Oliver, Naccarato was "swimming" through the crowd, pushing and bumping people out of his way. Naccarato himself testified that he was "bumping" people with "light to moderate" bumps; that just prior to being struck by the defendant he "may have bumped into" the defendant. Naccarato conceded that he told the police that the first contact between him and the defendant was when he bumped into him. There was testimony that Naccarato and Oliver then exchanged words. Although it was disputed as to who threw the first punch, Naccarato admitted wrapping his arm around Oliver's neck, holding him down and punching him in the face. The parties disagree about whether Oliver responded by hitting Naccarato during the time Naccarato held him by the neck.

In addition, Naccarato did not claim that he acted in self-defense, fearing death or great bodily harm with no reasonable opportunity for escape. On the contrary, Naccarato testified that he quickly physically overcame Oliver, held his head in a vise-like grip and repeatedly punched him in the face. This is not a *Rinaldi* situation in which "an officer [drove] a previously law-abiding citizen to extreme acts in defense of his life, and then point[ed] to those very acts as evidence of the 'objective reasonableness' of a subsequent arrest...." *Id.* at 116–17. The plaintiff argues that *Rinaldi* is applicable and analogous to this case because the force used by Naccarato was proportional to the force used by Oliver, just as the acts of the *Rinaldi* plaintiff were in proportion to the defendant's antagonism in that case. The Court disagrees. Naccarato's own testimony reveals that he escalated the altercation.

The Court does not disregard Oliver's conduct as a participant in the altercation at the Alley Bar. There is no dispute however, that the incident was initially precipitated by Naccarato pushing his way through the crowd and thus bumping and encountering Oliver. Under the circumstances of this case, a factual dispute with regard to which party was the instigator is not material to the issue of qualified immunity. The Second Circuit has noted that

> [p]laintiffs may not unwrap a public officer's cloak of immunity from suit simply by alleging even meritorious factual disputes relating to probable cause, when those controversies are nevertheless not material to the ultimate resolution of the immunity issue.

*Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *see also Weaver,* 40 F.3d at 537.

Oliver arrested Naccarato for a violation of N.Y. Penal Law § 120.00(1), which provides:

> A person is guilty of assault in the third degree when:

1. With intent to cause physical injury to another person, he causes such injury to such person or to a third person.

While there is disagreement as to who was the initial aggressor at the Alley Bar, namely who threw the first punch, let us assume that Oliver did. It is not disputed that Naccarato initially pushed Oliver and that Naccarato repeatedly punched Oliver in the face while holding his head under his arm. Also it is undisputed that Naccarato inflicted fairly significant injuries to Oliver, including a black eye, bloody face and cut lip. These facts are relevant with regard to the immunity defense.

[2] One could surmise that the situation described here might lead an off duty police officer to arrest out of revenge or anger. However, the subjective motivation of the officer is not the relevant consideration with regard to whether qualified immunity is applicable. See Harlow v. Fitzgerald, 457 U.S. 800, 815–21, 102 S.Ct. 2727, 2736–40, 73 L.Ed.2d 396 (1982). In Harlow, the Supreme Court sought to minimize judicial inquiry into the subjective intent behind official action, and announced a standard based on objective reasonableness. Id.; see also Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987).

■ The proper inquiry with regard to qualified immunity is an objective and fact specific one that focuses on the following: based on the circumstances known at the time of the arrest, could competent, reasonable officers disagree as to whether there existed probable cause to arrest? See e.g., Anderson, 483 U.S. at 641, 107 S.Ct. at 3040; O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir.1993); Krause. v. Bennett, 887 F.2d 362, 370 (2d Cir.1989). This inquiry must include an analysis of the specific facts surrounding the arrest. Anderson, 483 U.S. at 640, 107 S.Ct. at 3039.

■ Probable cause to arrest is said to exist "when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir.1989) (citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Probable cause does not require an that arresting officer be certain that prosecution for the offense will be ultimately successful. Krause, 887 F.2d at 371. The arresting officer's assessment "deals with probabilities. These are not technical; they are the factual and practical considerations of everyday life in which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462 U.S. 213, 241, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 (1983) (quoting Brinegar v. U.S., 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, reh'g denied, 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513 (1949)). In the standard of probable cause the law recognizes that "many situations which confront officers in the course of executing their duties are more or less ambiguous." Brinegar, 338 U.S. at 175–76, 69 S.Ct. at 1311.

■ Here, Oliver's assessment of the situation included personal knowledge of the fact that Naccarato held him down and repeatedly struck him in his face with his fist and injured him. There is no doubt that Naccarato intentionally caused Oliver physical injury. The photograph in evidence vividly demonstrates Oliver's black eye and cut lip and face. Oliver had personal, direct knowledge of the elements of assault in the third degree, namely, (1) acts intending to cause physical injury and (2) a resulting physical injury. N.Y. Penal Law § 120.00(1). Oliver also had the authority to make the arrest if it was reasonable to believe Naccarato committed that offense. See Calamia, supra.

The Court approaches the question of objective reasonableness from two different perspectives and arrives at the same conclusion. First, would a police officer of reasonable competence in the same situation as Oliver (being held by the head and punched repeatedly in the face and physically injured by Naccarato, even assuming the officer threw the first punch) have reason to believe that the elements of assault in the third

degree were present so that there was probable cause to make an arrest? Second, would a police officer of reasonable competence observing Naccarato hold the head and repeatedly punch the face of a third person, causing physical injury to that person, have reason to believe that the elements of assault in the third degree were present so that there was probable cause to make an arrest, even assuming the third person threw the first punch? The Court's view is that in either scenario it is objectively reasonable to believe that the plaintiff committed assault in the third degree so that there was probable cause to arrest.

The Court's view might be different if Naccarato had used only that amount of force necessary to discharge his duties as a bouncer and lead Oliver from the bar, or if Naccarato used only enough force to protect himself. However, even viewing the facts in the light most favorable to the plaintiff and resolving all inferences in the plaintiff's favor, the fact remains, as stated by the plaintiff himself, that he held Oliver's head under his arm and repeatedly punched him in the face. Naccarato admitted on the witness stand that he held Oliver's head with his left arm and repeatedly punched him in the face with his fist. It is not disputed that these punches caused physical injuries to Oliver. The Court finds that these facts support an objectively reasonable belief that the elements of assault in the third degree were present, so that there was probable cause to arrest.

Moreover, the question of immunity that is now before the Court is distinct from the question of probable cause. It can be objectively reasonable for an officer *to believe* that probable cause existed for the arrest, even in the absence of a finding that probable cause in fact existed. *Bradway v. Gonzales,* 26 F.3d 313 (2d Cir.1994). In *Bradway* the plaintiff brought a Section 1983 action alleging that her constitutional rights were violated (1) by an unlawful search of her home and (2) by an arrest without probable cause. The defendant New York State Troopers moved for judgment as a matter of law based on qualified immunity prior to the close of the evidence. The court reserved decision. As to the false arrest claim the jury found (1) the troopers lacked probable cause to arrest, and (2) the plaintiff was entitled to $100,000.00 in compensatory damages. *Id.* After the verdict was returned, Judge McAvoy dismissed the complaint on the ground that the troopers were entitled to qualified immunity. The Second Circuit affirmed. *Id.*

Discussing this situation in another case, the Second Circuit explained,

> evidence might be sufficient to support a verdict that probable cause for an arrest was lacking under the actual circumstances as determined by the jury, *without a showing it was unreasonable for an officer to mistake the existence of probable cause at the time. See Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. at 3039 [emphasis supplied] ('We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and ... should not be personally liable.'); *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986) (immunity should be recognized where officers of reasonable competence could disagree on whether there was probable cause to support a warrant); *Melear v. Spears,* 862 F.2d 1177, 1187–88, (5th Cir. 1989) (Higginbotham, concurring opinion) (suggesting use of special interrogatories).

*Warren v. Dwyer,* 906 F.2d 70, 75 (2d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990) (emphasis supplied). In *Warren,* the police officer alleged that he "grew concerned that a dangerous situation could erupt and arrested Warren when the plaintiff's words and actions began to draw attention to others on the street." *Id.* The Second Circuit held that a finding that the officer mistakenly but reasonably concluded there was probable cause was an accurate reflection of the law. *Id.* at 76; *see also Wachtler v. County of Herkimer,* 35 F.3d 77 (2d Cir.1994) (arresting officer's belief that he had probable cause to arrest plaintiff was well-provided even though he relied upon the wrong statutory provision and the wrong offense); *O'Neill,* 986 F.2d 646 (reversing denial of Rule 50(b) motion in section 1983 action

where the jury awarded $10,000.00 to plaintiff); *Krause*, 887 F.2d at 364 (reversing denial of Rule 50(b) motion in section 1983 action where the jury awarded more than $25,000.00 to plaintiff).

 The question for the Court is whether "officers of reasonable competence could disagree" on the issue of probable cause on the facts presented in this case. *See Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The Court's response decidedly is 'yes.' Specifically, a reasonable officer whose head was held while being repeatedly punched and who sustained physical injuries from the punches could conclude that probable cause to arrest for assault was present, even assuming the officer threw the first punch. Again, the elements of assault in the third degree are (1) intent to injure another and (2) resulting injury. N.Y. Penal Law § 120.00(1). Where reasonable officers could disagree as to whether there was probable cause to arrest, the defense of qualified immunity should be recognized, *id.*, and the Court does recognize such a defense in this case. Moreover, in this case, there was no self defense argument asserted by the plaintiff.

The Court notes, for purposes of discussion only, that if the jury had returned a verdict in favor of the plaintiff on the excessive force claim, namely that Oliver kicked Naccarato in the back as he was handcuffed and kneeling, qualified immunity as to that claim would not be appropriate. If an officer kicked a handcuffed arrestee in the back, that act would violate a clearly established constitutional right and this Court would not grant immunity from liability for such conduct. However, the jury rejected that cause of action.

### CONCLUSION

With regard to the false arrest claim, in this Court's view, a reasonable police officer could have believed that Naccarato's arrest was lawful, in light of the clearly established law and information available at the time of the arrest. *See Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039. Therefore, Oliver is entitled to immunity and the Court directs entry of judgment in his favor as a matter of law.

The verdict in favor of the plaintiff is set aside in its entirety and the complaint is dismissed.

**SO ORDERED.**