**Alphonse RAUCCIO**

v.

**Anthony FRANK, et al.**

**No. N–90–161 (WWE).**

United States District Court, D. Connecticut.

Oct. 29, 1990.

Alice Miskimin, William Dow III, Susan H. Bartholomew, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, Conn., for plaintiff.

Richard Montague, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Michael S. Emery, Francis Bartholf, Office of Field Legal Services, Windsor, Conn., for defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS

EGINTON, District Judge.

BACKGROUND

Plaintiff, Alphonse Rauccio, commenced this action against Anthony Frank in his official capacity as Postmaster General of the United States Postal Service and against various other Postal Service employees in both their official and individual capacities. Defendants filed a Certification of Scope of Employment and a Notice of Substitution substituting the United States as the proper defendant for purposes of plaintiff's common law claims. *See* The Federal Employees Liability Reform and Tort Compensation Act of 1988, § 6, Pub.L. No. 100–694, 102 Stat. 4563 (1988) (28 U.S.C. § 2679(d)(1)). In his complaint plaintiff alleges constitutional violations and common law torts in connection with a demotion and subsequent termination of his employment with the Postal Service.

Plaintiff seeks both damages and injunctive relief.

Defendants have moved to dismiss this action on the grounds 1) that a damages remedy is foreclosed by the remedies provided in the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (1978) (codified as amended in various sections of 5 U.S.C.) ("CSRA"); 2) that even if plaintiff is not foreclosed by the CSRA, he has failed to state a claim for damages or injunctive relief; 3) that the exclusive remedy for plaintiff's common law claims is an action against the United States rather than against individual employees and since the United States has been substituted for purposes of the common law claims, this Court lacks subject matter jurisdiction. For the reasons set forth below, the defendants' Motion to Dismiss will be granted in part and denied in part.

FACTS

Plaintiff has been an employee of the United States Postal Service for seventeen years and currently works at the New Haven Management Sectional Center. ("MSC"). In October 1986, Donald D'Andrea, the Postmaster of New Haven MSC, informed plaintiff that the Postal Service contemplated substantial charges against him which would warrant his removal. Plaintiff claims that he was informed by D'Andrea that he could either accept a reduction in grade and transfer from the New Haven Post Office or the Postal Service would bring a removal action against him. Plaintiff claims he was told that if he accepted the grade reduction no further action would be taken, his case would be closed and his record would remain clean. Plaintiff accepted the reduction in grade and was transferred to the West Haven branch of the post office.

In January, 1989, plaintiff received a notice of proposed removal based on an apparent determination by the Post Office that the charges against plaintiff were sufficiently serious to warrant his removal. Plaintiff was ultimately fired.

As provided by the CSRA, plaintiff appealed to the Merit Systems Protection Board ("MSPB") both the initial reduction in grade and the subsequent removal. *See* 5 U.S.C. § 1201; 5 C.F.R. Part 1201 (1989). Prior to any hearing, the Postal Service rescinded plaintiff's removal and his reduction in grade, placed him on administrative leave and moved to dismiss his appeals. The appeals were dismissed as moot and plaintiff petitioned for review before the MSPB.

On August 31, 1989, while the petition for review was pending on Rauccio's first two MSPB appeals, D'Andrea brought another removal proceeding against plaintiff purportedly based on the same conduct which was the subject of the original disciplinary proceeding. On March 2, 1990 plaintiff was again removed from his position with the postal service. On March 13, 1990, the MSPB ruled on plaintiff's petition for review, finding that he was entitled to have his first two appeals determined on the merits, since the agency had not returned plaintiff to the status quo ante. On March 16, 1990, D'Andrea again rescinded the disciplinary action and charges against the plaintiff.

On April 3, 1990, D'Andrea ordered plaintiff to return to work on April 9th. By issuing this order the agency complied with the MSPB's "status quo ante" requirement, thus rendering moot the plaintiff's first two appeals. These appeals were dismissed on July 4, 1990. Plaintiff now claims that D'Andrea intends to bring another disciplinary proceeding based on the same conduct alleged in the initial proceeding.

Plaintiff claims that throughout this entire process he has been deprived of his due process rights by virtue of the continued attempts by various employees of the Postal Service to prevent him from receiving a hearing on the merits of his case. In addition, plaintiff alleges that he was not provided with all the documents which were provided to the official who originally decided that he should be removed from his position. Plaintiff argues that this failure to turn over all the relevant documents precluded him from having an opportunity to make an oral response to an appropriate official, as required by 5 CFR 752.404(c).

In addition, plaintiff claims that throughout the administrative process before both agency officials and the MSPB, Postal Service employees named in this action have coerced and intimidated other Postal Service employees to provide statements damaging to plaintiff. Plaintiff also claims that the Postal Service has reinterviewed potential witnesses, some as many as five or six times; has used slanted questions to elicit responses unfavorable to plaintiff; has created statements for witnesses to sign which have altered and distorted the information provided by such witnesses; has omitted or failed to take statements from witnesses who have provided information contradicting negative information concerning the plaintiff; and has threatened with loss of their jobs witnesses who have provided favorable statements to plaintiff. Plaintiff argues that these actions have prevented him from being heard on the merits of the underlying charges, thus violating his constitutional right to due process. As a result of these actions, plaintiff claims that the defendants in their official capacities are estopped from asserting as a defense to this action that plaintiff has failed to exhaust the administrative remedies available to him under the Civil Service Reform Act.

## DISCUSSION

### I. *CONSTITUTIONAL CLAIMS (Count I)*

■■ In support of their motion to dismiss plaintiff's constitutional claims, defendants assert that a damages remedy is foreclosed because of the remedies provided by the CSRA. In most instances, defendants' argument would be persuasive. In this case, however, there is a fatal flaw in the logic of that argument based on an apparent misapprehension of plaintiff's claim. The essence of plaintiff's claim in this case is that the defendants have in

effect foreclosed him from pursuing the remedies provided by the CSRA. If the factual allegations made by plaintiff in this case are true, as this Court must assume for purposes of this motion, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), plaintiff is left with no adequate procedural remedy through which to obtain review of the agency's actions.[1]

In *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized that the Constitution supports a private cause of action for damages against a federal official. In *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), *Bivens* was extended to support a cause of action based on a deprivation under the Fifth Amendment Due Process Clause. Subsequent cases have considered the question of whether the *Bivens* remedy should be extended to actions involving various federal agencies and their employees. The Supreme Court has been reluctant to extend the *Bivens* remedy in the face of an indication that Congress intended to preclude a damages remedy.

> The federal court's statutory jurisdiction to decide federal questions confers adequate power to award damages to the victim of a constitutional violation. When Congress provides an alternative remedy, it may, of course, indicate its intent, by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself, that the court's power should not be exercised. In the absence of such a congressional directive, federal courts must make the kind of remedial determination that is appropriate for a common law tribunal, paying particular heed, however, to any special factors counselling hesitation be-

---

1. In a footnote in their reply papers defendants point to a somewhat troubling issue. At the present, no proceedings are currently pending against the plaintiff, thus rendering his claim for injunctive relief arguably speculative and non-justiciable. Nevertheless, the Court at this time declines to dismiss plaintiff's claims on such grounds, finding that this case may fall within the group of cases presenting facts capable of repetition while always evading review. *See e.g., DeFunis v. Odegaard*, 416 U.S. 312, 319, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1974) (Capable of repetition doctrine applicable where plaintiff makes a reasonable showing that he will again be subjected to the alleged illegality).

fore authorizing a new kind of federal litigation.

Bush v. Lucas, 462 U.S. 367, 378, 103 S.Ct. 2404, 2411, 76 L.Ed.2d 648 (1983).

 The implementation of a comprehensive remedial scheme has been recognized as a "special factor", which would militate against the creation of a Bivens remedy. Id. at 380, 103 S.Ct. at 2412.

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy for violation of employees' First Amendment rights.

Bush v. Lucas, 462 U.S. at 388, 103 S.Ct. at 2416.

Therefore, where Congress has created a comprehensive procedural remedy through which a plaintiff may seek redress, the federal courts will ordinarily decline to create a Bivens remedy, even if the substantive remedy available to the plaintiff is woefully inadequate, or indeed, non-existent. Schweiker v. Chilicky, 487 U.S. 412, 428–29, 108 S.Ct. 2460, 2470–71, 101 L.Ed.2d 370 (1988). In general, the CSRA regulations applicable to Post Office employees constitute a comprehensive regulatory scheme which would preclude a Bivens action. See Kotarski v. Cooper, 866 F.2d 311, 312 (9th Cir.1989); McIntosh v. Turner, 861 F.2d 524, 526 (8th Cir.1988); Spagnola v. Mathis, 859 F.2d 223, 230 (D.C.Cir.1988) (en banc).

However, as plaintiff points out, Bush v. Lucas and its progeny are premised on the existence and availability of an adequate system of procedural safeguards through which a plaintiff may seek relief. In the instant case, the plaintiff's due process claim is premised on the defendants' interference with the procedural mechanism which Congress has created for the protection of employees. It is in this critical respect that Bush v. Lucas and the related cases cited by defendants are distinguishable.[2] In each, the availability of an adequate procedural remedy was fatal to plaintiff's Bivens claims. In this case, assuming plaintiff's factual allegations to be true, defendants have rendered effectively unavailable any procedural safeguard established by Congress. Thus, Bush and its progeny are inapplicable to the facts of this case.

The existence of an adequate system of procedural safeguards, which was a "special factor" counseling against the creation of a Bivens remedy in Bush and Schweiker, is clearly absent under the circumstances of the present case. Accordingly, plaintiff in this action should be permitted to maintain a cause of action under the Bivens doctrine for the violation of his right to due process pursuant to the Fifth Amendment to the United States Constitution.[3]

---

**2.** Defendants cite Roman v. United States Postal Service, 821 F.2d 382, 386 (7th Cir.1987) for the proposition that plaintiff's standing to seek a remedy under Bivens is not strengthened by allegations that defendants have prevented him from receiving a fair hearing. However, in Roman the plaintiff failed to pursue the administrative remedies at his disposal. In this case, plaintiff has consistently attempted to avail himself of the administrative remedies, but according to his allegations, has been thwarted in all of these attempts by the actions of the defendants.

**3.** The review scheme contemplated by the CSRA would permit plaintiff to raise these constitutional claims before the Court of Appeals for the Federal Circuit. To date, however, assuming plaintiff's allegations to be true for purposes of this motion, defendants have made every effort to ensure that plaintiff never reaches that Court. It is these actions which constitute the subject matter of plaintiff's Bivens claims. This Court will entertain, and view favorably, any renewed motion to dismiss should plaintiff be permitted to exercise his rights and properly raise these claims pursuant to the provisions of the CSRA.

■ As a second argument in support of their motion to dismiss the constitutional claims raised in this case, defendants argue that plaintiff has failed to adequately plead any violation. The Court disagrees. The plaintiff has set forth in sufficient detail facts which, if proven, could support a finding that the defendants have violated plaintiff's constitutional rights.

Finally, defendants claim that as individuals they are entitled to either qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or, as to certain defendants, absolute immunity in connection with their role in the agency proceedings. *Butz v. Economou*, 438 U.S. 478, 512–13, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895 (1978).

■ Absolute immunity from liability is accorded to government officials whose duties are deemed as a matter of public policy to require such protection to enable them to function independently and effectively without fear of harassment. These officials include the President, judges, legislators, prosecutors and high executive officers engaged in adjudicative or quasi-judicial functions. *Barrett v. United States*, 798 F.2d 565, 571 (2d Cir.1986).

■ Government officials who do not qualify for absolute immunity may nevertheless, in an appropriate case, be entitled to assert the defense of qualified immunity which shields them from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Barrett v. United States*, 798 F.2d at 573 *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ Defendants have failed to demonstrate any special policy concerns which would require this Court to afford defendants Freeman, Janes and D'Andrea absolute immunity. In addition, while some or all of the individual defendants in this case may be entitled to qualified immunity, the Court finds that the facts in this case are not yet sufficiently developed for the Court

to make such a determination. *See Warren v. Dwyer*, 906 F.2d 70, 74–76 (2d Cir. 1990). Thus, the Court declines to dismiss plaintiff's *Bivens* claims on immunity grounds at this time.

## II. *INJUNCTIVE RELIEF (Count II)*

In support of their motion to dismiss plaintiff's claim for injunctive relief, defendants rely primarily on *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). *Fausto*, however, involved the exclusion of non-preference eligible employees from certain procedural protections of Ch. 75 of the CSRA. The issue in that case was whether or not the exclusion of these employees from the review provisions established by Congress in the CSRA was meant to preclude those employees from seeking judicial review or if it left them free to pursue the remedies that had been available to them before the enactment of the CSRA. *United States v. Fausto*, 484 U.S. at 443–44, 108 S.Ct. at 671–72. In this case, however, there is no question that the review provisions set forth in the CSRA are intended to be available to plaintiff. It is the defendants' alleged interference with plaintiff's right to avail himself of the protections afforded by the CSRA which is at issue in this case. Thus, *Fausto* is inapplicable here.

■ Defendants argue further that the Court should exercise judicial restraint and refrain from hearing plaintiff's claims for injunctive relief since these claims are properly presented through the procedures available to plaintiff pursuant to the provisions of the CSRA (*i.e.*, to the MSPB and the Court of Appeals for the Federal Circuit.). In the ordinary case, the government's position would be correct. However, if plaintiff's claims are true, defendants' conduct will continue to preclude him from taking advantage of the protections afforded by the CSRA. Therefore, the facts of this case do not give rise to the concerns which would ordinarily justify foreclosing plaintiff's claim for injunctive

relief.[4]

The Court is not persuaded by defendants' arguments that the facts pleaded in the plaintiff's amended complaint are insufficient to establish a prima facie showing of irreparable injury and the inadequacy of legal remedies, a prerequisite to injunctive relief. Taken as true for the purposes of this motion, plaintiff's allegations regarding defendants' interference with the administrative procedural safeguards on their face constitute irreparable harm for which plaintiff has no adequate remedy at law. While money damages could clearly compensate plaintiff for any lost wages or benefits, money damages alone will never grant plaintiff a meaningful review of the allegations against him. By constantly firing him and then rehiring him just before his appeal is heard, defendants have continuously deprived plaintiff of his opportunity for the review provided by the CSRA. Money damages cannot achieve the relief plaintiff seeks.

Plaintiff has established at least a prima facie case of irreparable injury. "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2948 (1984 & Supp.1990). *See also American Postal Workers Union v. U.S. Postal Service*, 595 F.Supp. 403 (D.Conn.1984).

### III. ESTOPPEL

■ The Court cannot agree with defendants' argument that plaintiff has failed to exhaust his administrative remedies. Defendants cannot have it both ways. Either they permit plaintiff to proceed with the procedures provided for by the CSRA or they don't. If they choose to thwart plaintiff's attempts to exhaust his administrative remedies, they cannot be heard to raise this failure as a reason for this Court to refuse to exercise its jurisdiction. The Court does not decide here whether the facts will support plaintiff's claim that the conduct of the defendants prevented him from being able to proceed in accordance with the provisions of the CSRA. However, if the facts ultimately do support such a finding, then plaintiff should be permitted to assert estoppel against the defendants. Contrary to defendants' contention, the Supreme Court in *OPM v. Richmond,* —— U.S. ——, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) explicitly declined to announce a blanket rule that no estoppel can be asserted against the government. *OPM v. Richmond,* —— U.S. at ——, 110 S.Ct. at 2470. Indeed as Judge Newman has noted,

> Procedural requirements … serve important interests. But when the failure to observe the procedural conduct is caused by conduct of a government official, an estoppel to prevent the Government from asserting procedural non-compliance means that the substantive legislative policy will be carried out. On the other hand, permitting the government to precipitate the procedural default and then to assert it as a defense means that the substantive legislative policy will be frustrated.

*Hansen v. Harris*, 619 F.2d 942, (2d Cir. 1980), *rev'd sub nom. Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam).

Thus, the Court will not dismiss Count III of plaintiff's amended complaint.

### IV. Common Law Claims

The Court agrees with the defendants that plaintiff's common law claims must be

---

**4.** The Court does not imply that plaintiff is entitled to the injunctive relief he seeks. Plaintiff requests a permanent injunction against any future disciplinary action by the Post Office. At this juncture, the Court is not inclined to enter such a sweeping injunction. The Court will consider an injunction preventing any future interference with the CSRA procedures in the event plaintiff is fired for the third time. Such an injunction would be in keeping with the intent of Congress when it enacted the CSRA because it would allow plaintiff to avail himself of the procedural safeguards provided by this comprehensive regulatory scheme. Plaintiff's request for a preliminary injunction is scheduled for oral argument on October 30, 1990. Although the Court, by this ruling, declines to dismiss plaintiff's claims for injunctive relief, it makes no determination as to whether the facts presented at the hearing will support the issuance of such an injunction.

dismissed. The Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, 102 Stat. 4563 (1988) provides that:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim ... Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee ... is precluded without regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1) (1988). Under the Act, upon certification by the Attorney General or his designee that the individual defendant was acting within the scope of his employment, the action is deemed one against the United States under the Federal Tort Claims Act, and the United States is substituted by operation of law as the sole defendant with respect to common law claims. *See* 28 U.S.C. § 2679(d)(1).

In this case the Director of the Justice Department's Tort Branch filed a Certification of Scope of Employment as well as a Notice of Substitution on behalf of each of the individually sued defendants in this action. The United States was thus substituted as the sole defendant with respect to the plaintiff's common law claims. 28 U.S.C. § 2679(d)(2). Thus, since the exclusive remedy for common law torts committed by federal employees acting within the scope of their employment is against the United States, *see* 28 U.S.C. § 2679(b)(1), the common law tort claims against the individual defendants must be dismissed.

The common law claims now pending against the United States must also be dismissed since this Court lacks subject matter jurisdiction. It is well established that the United States, as sovereign, is immune from suit unless it has consented to be sued, and its consent to be sued defines the terms and conditions upon which it may be sued. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). The Federal Tort Claims Act is a limited waiver of sovereign immunity, which includes certain jurisdictional prerequisites to suit.

Section 2675(a) of Title 28, United States Code, provides that no suit may be instituted against the United States under the Federal Tort Claims Act. unless the claimant first presents a claim to the appropriate federal agency. This requirement is jurisdictional and it cannot be waived. *See United States v. Kubrick,* 444 U.S. 111, 117–118, 100 S.Ct. 352, 356–357, 62 L.Ed.2d 259 (1979). In this case defendant asserts and plaintiff does not contradict that plaintiff has failed to file the required administrative claim. Since the plaintiff has not met the jurisdictional requirements of 28 U.S.C. § 2675(a), this Court lacks subject matter over the assertion of common law tort claims against the United States. Thus, the common law claims must be dismissed.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is hereby GRANTED as to Counts Four, Five and Six of the June 25, 1990 Amended Complaint. Defendants' Motion to Dismiss is hereby DENIED as to Counts One, Two and Three of the Amended Complaint.