POOLER, Circuit Judge,
joined by Judges CALABRESI, SACK, and PARKER, dissenting.
I agree with the well-reasoned dissents of my colleagues and join their opinions in full. I write separately to note that the majority’s opinion in this troubling and unusual case should not be misread as adopting a new framework for determining whether to recognize a Bivens claim, and to explain why I do not agree that Arar’s TVPA claim should be dismissed.
I. Bivens
At first glance, it might seem that the majority’s reasoning with respect to Arar’s Bivens claim proceeds in two simple steps: (1) Arar’s claim presents a new context for a Bivens action,[1] and (2) special factors counsel hesitation before recognizing a Bivens remedy. But a closer reading of the majority opinion reveals far more than a mere hesitation to extend Bivens to a new context in light of special factors. Because the majority’s holdings bear no relation to its new statements of Bivens principles, those remarks are dicta. Moreover, any such simplistic framework would be contrary to the Supreme Court’s Bivens decisions, which require that courts consider *624 reasons both for and against recognizing the remedy.
The Supreme Court has held that we must engage in the following analysis in considering whether to recognize Bivens action:
In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. But even in the absence of an alternative, a Bivens remedy is a subject of judgment: “the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.”
Wilkie v. Robbins, 551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) (quoting Bush v. Lucas, 462 U.S. 367, 378, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)). After sidestepping the question of existing remedies, Maj. Op. at 573-74, the majority states that the remainder of inquiry can be reduced to the question of whether there any special factors to consider. Id. at 573-74.
The majority begins by observing that the Supreme Court has extended Bivens twice but refused to extend Bivens seven times, as if this empirical disfavor could save courts the trouble of engaging in “the kind of remedial determination that is appropriate for a common-law tribunal.” Wilkie, 551 U.S. at 550, 127 S.Ct. 2588.[2] Notwithstanding the Supreme Court’s reluctance to extend Bivens in recent years, it has not overruled Bivens, nor has it overruled the decisions extending Bivens to new contexts in Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) and Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), nor has it ever held that “Bivens and its progeny should be limited to the precise circumstances that they involved.” Wilkie, 551 U.S. at 568, 127 S.Ct. 2588 (Thomas, J., concurring) (quotation marks omitted). Thus, the majority must distinguish Bivens, Davis, and Green’s cases from Arar’s.
To do so, the majority points to “special factors” that counsel hesitation. The majority observes, in dicta, two “principles” emerging from the case law on Bivens. First, where special factors counseling hesitation exist, “no account is taken of countervailing factors.” Maj. Op. at 574. Notwithstanding this new principle, the majority concludes that it “cannot ignore that, as the panel dissent put it, ‘there is a long history of judicial review of Executive and Legislative decisions related to the conduct of foreign relations and national security.’ ” Id. at 581 (quoting Arar v. Ashcroft, 532 F.3d 157, 213 (2d Cir.2008) (Sack, J., dissenting in part)). And the majority recognizes that prudential considerations play into the Bivens analysis, considering, for example, whether a Bivens action in Arar’s context would have a deterrent effect. Id. at 580. Ultimately, therefore, the majority has not adopted any new principle of disregarding countervailing factors.
Second, the majority proclaims that the threshold for determining whether a factor “ ‘counsels hesitation’ is remarkably low.’ ” Maj. Op. at 574. The majority explains that “ ‘[hjesitation’ is ‘counseled’ whenever thoughtful discretion would pause even to *625 consider.” Id. I find this statement somewhat inscrutable, but I do not take the majority to mean that Bivens should not be extended anytime a special factor deserves any degree of consideration. Insofar as the majority intends to lower the bar for special factors, its remarks are dicta. These remarks bear no relation to the majority’s holding that extension of Bivens to Arar’s context is not “advisable,” id. at 572-73, because separation of powers, institutional competence, and other factors “sternly” counsel hesitation. Id. at 574. Indeed, the majority’s opinion devotes twenty pages to its stern assessment of special factors, id. at 574-82, including the fear that “actual terrorists” could win damages awards, placing courts in the position of funding terrorism, id. at 580 n. 13; that the government will be “graymail [ed]” into settling cases to prevent disclosure of classified information, id. at 579-81; and that other countries will be “less willing to cooperate with the United States in sharing intelligence resources to counter terrorism,” id. at 576.
Apart from being dicta, these remarks represent a misreading of Supreme Court precedent. Wilkie exhorts that we pay heed to special factors counseling hesitation while exercising the type of remedial judgment appropriate for a common law tribunal — “weighing reasons for and against the creation of a new cause of action, the way common law judges have always done.” 551 U.S. at 554, 127 S.Ct. 2588 (citing Bush, 462 U.S. at 378, 103 S.Ct. 2404). In the exercise of remedial judgment, we should not consider only those factors that militate in favor of one side of the argument. We must be mindful of a wide range of prudential concerns. See, e.g., id. at 550, 127 S.Ct. 2588 (holding that “any freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee”); Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (considering whether extension of Bivens would “deter individual federal officers ... from committing constitutional violations”). The majority cannot overrule Wilkie’s holding that we must make “the kind of remedial determination that is appropriate for a common-law tribunal,” 551 U.S. at 550, 127 S.Ct. 2588, by replacing that phrase with ellipses when quoting the case, see Maj. Op. at 573-74.
Were the majority’s dicta the rule, there would be no explanation for the Supreme Court’s decision in Bivens in the first place. Surely there were special factors that would have counseled hesitation — the drain on the public fisc, the strain on judicial resources, the hindrance to law enforcement personnel whose efforts had to be diverted to defending lawsuits for damages. Without pausing to consider these factors, the Bivens Court held that a damages remedy was necessary to enforce the Fourth Amendment. Bivens v. Six Unknown Named Agents, 403 U.S. 388, 397-98, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Moreover, were the majority’s dicta correct, it would be impossible to make heads or tails of Davis v. Passman, supra. In that case, the Court extended Bivens to a claim for employment discrimination in violation of the equal protection component of the Fifth Amendment’s Due Process Clause against a member of Congress. The Court recognized a Bivens remedy despite pausing to give thoughtful consideration to the argument that Passman’s status as a member of Congress, “counseled] hesitation.” 442 U.S. at 246, 99 S.Ct. 2264. The Court also noted the risk of “deluging federal courts with claims” and the scarcity of judicial resources, but did not find these special factors sufficiently persuasive to overwhelm Davis’s need *626 for a remedial mechanism. Id. at 248, 99 S.Ct. 2264 (quotation marks omitted).
The absence of other remedies for a constitutional violation may be a reason for creating a new cause of action. Wilkie, 551 U.S. at 554, 127 S.Ct. 2588 (considering, at the second step of the analysis, the inadequacy of existing remedies). Thus, the Supreme Court has recognized a Bivens remedy where, for the plaintiff, it was “damages or nothing.” Davis, 442 U.S. at 245, 99 S.Ct. 2264 (quoting Bivens, 403 U.S. at 410, 91 S.Ct. 1999 (Harlan, J., concurring in judgment)). “ ‘The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.’ ” Bivens, 403 U.S. at 397, 91 S.Ct. 1999 (quoting Marbury v. Madison, 1 Cranch (5 U.S.) 137, 2 L.Ed. 60 (1803)). “[Wjhere federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.” Id. at 392, 91 S.Ct. 1999 (quoting Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). In Davis, the Court held, “unless such rights are to become merely precatory, the class of those litigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means other than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights.” 442 U.S. at 242, 99 S.Ct. 2264.
The majority “avoids any categorical ruling on alternative remedies,” in favor of its “dominant holding” on special factors. Maj. Op. at 563-64.[3] I have searched the majority’s opinion for a subordinate and non-categorical ruling on alternative remedies, and I have found none. This is for good reason. The majority recognizes that “Arar has alleged that he was actively prevented from seeking any meaningful review and relief through the INA processes.” Id. at 600. This makes Arar’s case unlike those in which the Court refused to imply a Bivens remedy upon concluding that Congress had already established a remedial scheme covering the field. See, e.g., Schweiker v. Chilicky, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). Where defendants blocked a plaintiffs access to the remedies established by Congress, foreclosing a Bivens remedy eliminates any judicial review. See Rauccio v. Frank, 750 F.Supp. 566, 571 (D.Conn.1990); Grichenko v. U.S. Postal Serv., 524 F.Supp. 672, 676-77 (E.D.N.Y.1981). This result thwarts Congress’s will and abdicates the judicial role. The majority errs in failing to take account of this consideration in its assessment of special factors.
In cases in which the Court declined to extend Bivens, it did not resolve the issue simply by observing that it had to pause to consider special factors. Rather, the Court declined to extend Bivens because factors related to institutional competence and separation of powers strongly counseled hesitation. For example, in Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the Court declined to create a damages remedy for alleged racial discrimination by military officers because *627 “[t]he need for ... a special and exclusive system of military justice[ ] is too obvious to require extensive discussion; no military organization can function without strict discipline and regulation that would be unacceptable in a civilian setting,” id. at 300, 103 S.Ct. 2362, and the creation of a Bivens remedy by the federal courts “would be plainly inconsistent with Congress’ authority in this field” under Article lof the Constitution, id. at 304, 103 S.Ct. 2362.
Ultimately, the majority concludes that the Constitution provides Arar no remedy for this wrong, that the judiciary must stay its hand in enforcing the Constitution because untested national security concerns have been asserted by the Executive branch. For the reasons stated herein and in Judge Sack’s dissenting opinion, I would hold the Arar should have a Bivens remedy — to reinforce our system of checks and balances, to provide a deterrent, and to redress conduct that shocks the conscience. I understand the majority’s opinion today to be a result of its hyperbolic and speculative assessment of the national security implications of recognizing Arar’s Bivens action, its underestimation of the institutional competence of the judiciary, and its implicit failure to accept as true Arar’s allegations that defendants blocked his access to judicial processes so that they could render him to Syria to be tortured, conduct that shocks the conscience and disfigures fundamental constitutional principles. This is a hard case with unique circumstances. The majority’s disappointing opinion should not be interpreted to change Bivens law.
II. TVPA
I cannot join the Court in concluding that the facts of Arar’s complaint are insufficient to state a claim under the TVPA. Section 2(a) of the TVPA provides that a defendant is liable only if he acted under “actual or apparent authority, or color of law, of any foreign nation ...” 28 U.S.C. 1350 (note). In construing this requirement, we look “to principles of agency law and to jurisprudence under 42 U.S.C. § 1983.” Kadic v. Karadzic, 70 F.3d 232, 245 (2d Cir.1995). Under Section 1983, “[t]he traditional definition of acting under color of state law requires that the defendant ... have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.” West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (quotation marks omitted).
I agree with the majority that there is no litmus test for determining whether a Section 1983 defendant is acting under col- or of state law. Maj. Op. at 568 (“The determination as to whether a non-state party acts under color of state law requires an intensely fact-specific judgment unaided by rigid criteria as to whether particular conduct may be fairly attributed to the state.”) (citing Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass’n, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)). This is a wise departure from the test set forth by the panel opinion, which interpreted Section 1983 case law to require that when the defendant is a federal official, he must be under the “control or influence” of the state actor to act under color of state law. Arar, 532 F.3d at 175-76. Our Circuit has consistently recognized several bases for liability under Section 1983, “control or influence” being just one:
For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the “coercive power” of the state or is “controlled” by the state (“the compulsion test”); (2) when the state provides “significant en *628 couragement” to the entity, the entity is a “willful participant in joint activity with the [sjtate,” or the entity’s functions are “entwined” with state policies (“the joint action test” or “close nexus test”); or (3) when the entity “has been delegated a public function by the [sítate,” (“the public function test”).
Sybalski v. Indep. Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir.2008) (per curiam) (quoting Brentwood Acad., 531 U.S. at 296, 121 S.Ct. 924). As the majority now recognizes, “[a] federal officer who conspires with a state officer may act under color of state law.” Maj. Op. at 568 (citing Beechwood Restorative Care Ctr. v. Leeds, 436 F.3d 147, 154 (2d Cir.2006)).
The majority concludes that Arar’s pleading was deficient because he alleged only that “United States officials encouraged and facilitated the exercise of power by Syrians in Syria,” not that defendants possessed power under Syrian law which they used to remove him to Syria to be tortured. Maj. Op. at 603. I disagree. In the Section 1983 context, the Supreme Court has held that private individuals may be liable for joint activities with state actors even where those private individuals had no official power under state law. Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). In Sparks, the private individuals conspired with a state judge to enjoin the plaintiffs mining operation. The Court held:
[T]o act ‘under color of state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting ‘under color’ of law for purposes of § 1983 actions.
Id.; see also Khulumani v. Barclay Nat. Bank Ltd., 504 F.3d 254, 315 (2d Cir.2007) (Korman, J., concurring in part). Arar alleges that U.S. officials, recognizing that Syrian law was more permissive of torture that U.S. law, contacted an agent in Syria to arrange to have Arar tortured under the authority of Syrian law. Specifically, Arar alleges that U.S. officials sent the Syrians a dossier containing questions, identical to those questions he was asked while detained in the U.S., including one about his relationship with a particular individual wanted for terrorism. He also alleges the Syrian officials supplied U.S. officials with information they extracted from him, citing a public statement by a Syrian official. Assuming the truth of these allegations, defendants’ wrongdoing was only possible due to the latitude permitted under Syrian law and their joint action with Syrian authorities. The torture may fairly be attributed to Syria.
Because the majority’s holding in this case is not required by controlling law from the Section 1983 context,[4] the decision must turn on the unique features of this case — brought under the TVPA alleging joint action by federal agents with Syrian officials. The majority cites Harbury v. Hayden, 444 F.Supp.2d 19, 42-43 (D.D.C.2006), aff'd on other grounds, 522 F.3d 413 (D.C.Cir.2008). In that case, as well as one other, district judges concluded that U.S. officials pursuing federal policy under federal statutes act under color of U.S., not foreign, law. Id. (holding that CIA officers cooperating with the Guatemalan military acted under color of U.S. law because they were “within the scope of *629 their employment serving the United States” and “carrying out the policies and directives of the CIA”); Schneider v. Kissinger, 310 F.Supp.2d 251, 267 (D.D.C.2004) (“Dr. Kissinger was most assuredly acting pursuant to U.S. law ... despite the fact that his alleged foreign co-conspirators may have been acting under color of Chilean law.”), aff'd on other grounds, 412 F.3d 190 (D.C.Cir.2005). But the majority does not adopt this questionable reasoning — that a federal official can act under color of only one sovereign’s authority at a time. The majority simply observes that because “federal officials typically act under color of federal law, they are rarely deemed to have acted under color of state law.” Maj. Op. at 568 (quotation marks omitted).
Rather, where the alleged torture was carried out by foreigners in a foreign land, the majority draws a line between the actual exercise of power under foreign law and the encouragement, facilitation, or solicitation of that exercise of power. Id. at 568-69. This distinction is unprincipled. Under agency law, “when two persons engage jointly in a partnership for some criminal objective, the law deems them agents for one another. Each is deemed to have authorized the acts and declarations of the other undertaken to carry out their joint objective.” United States v. Russo, 302 F.3d 37, 45 (2d Cir.2002). It is of no matter that only one member of the conspiracy carried out the torture. If we carry the majority’s logic to its extreme, federal agents “could never be responsible for torture inflicted under color of foreign law, even if they were in the room with the foreign torturers orchestrating the techniques.” Arar Reply Br. at 36.[5]
Under Section 1983, non-state actors who willfully participate in joint action with state officials, acting under state law, themselves act under color of state law. By analogy, under the TVPA, non-Syrian actors who willfully participate in joint action with Syrian officials, acting under Syrian law, themselves act under color of Syrian law. In Aldana v. Del Monte Fresh Produce, 416 F.3d 1242, 1249, 1265 (11th Cir.2005), the Eleventh Circuit sustained a TVPA claim where plaintiffs alleged that a U.S. corporation “hir[ed] and directed] its employees and/or agents,” including a Guatemalan mayor, “to torture the Plaintiffs and threaten them with death.” 416 F.3d at 1265. The allegation that the corporation participated in joint action with the Guatemalan official was sufficient.[6] I see no principled reason to apply different rules to the TVPA context than the Section 1983 context, to federal agent defendants than corporate defendants, or to actors in the United States than actors on foreign soil.[7] Arar alleges that defen *630 dants, acting in concert with Syrian officials, interrogated him through torture under color of Syrian law, which they could not have accomplished under color of U.S. law alone.
Thus, I cannot agree that the panel correctly determined the TVPA question on the “color of law” question.
I must therefore respectfully dissent.

. I do not agree with the majority’s conclusion that Arar's case presents a new context for a Bivens action for the reasons stated in Judge Sack’s dissent.

. Recently, in dicta, the Supreme Court explained that its "reluctante]” to extend Bivens stems from the fact that "implied causes of action are disfavored.” Ashcroft v. Iqbal, - U.S. -, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009).

. By abandoning the panel majority's holding that the INA is an alternative existing remedy that precludes Bivens relief, tire majority has avoided any implication that well-established Bivens actions for immigrants alleging Fourth and Eighth amendment violations are without basis. And, by abandoning the holding that it could not take as true Arar’s 'unverified” allegations of official obstruction of his right to challenge the CAT determination, the opinion avoids the implication that Bivens claimants face a heightened pleading standard.

. Because the majority’s holding turns on the unique aspects of Arar’s claim under the TVPA, it does not limit the range of conduct for which non-state actors can be held liable under Section 1983.

. The majority's perplexing statement that if a federal official were found to be acting under color of foreign law, it "would render a U.S. official an official of a foreign government,” Maj. Op. at 568 n.3, is simply incorrect. A private actor is not transformed into a state official merely because he acted under color of state law, see Dennis, 449 U.S. at 27-28, 101 S.Ct. 183 (1980), and there is no reason that this would be the case in the analogous TVPA context.

. Although the question in Aldana was whether violence by a private security force involved "state action,” and not whether the U.S. corporation was acting in Guatemala under color of U.S. or Guatemalan law, in the Section 1983 context, the two inquiries are interchangeable. See, e.g., Lugar v. Edmondson Oil Co., 457 U.S. 922, 929, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); see also Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1264 (11th Cir.2009).

. Because plaintiffs must meet a plausibility standard for claims against federal officials under Ashcroft v. Iqbal, supra, I am not concerned that subjecting federal officials to lia *630 bility under the TVPA would open the floodgates to a wave of meritless litigation. But see Hayden, 444 F.Supp.2d at 41.