26 F.3d 313
 29 Fed.R.Serv.3d 997
 Rosemary BRADWAY, Plaintiff-Appellant,
Earl J. Bradway; Earl J. Bradway, Jr., a minor who sues by
his natural parents, guardians, and next friends, Rosemary
Bradway and Earl J. Bradway; Justin E. Bradway, a minor who
sues by his natural parents, guardians, and next friends,
Rosemary Bradway and Earl J. Bradway, Plaintiffs,
v.
William P. GONZALES, New York State Trooper; Susan C.
McDonough, New York State Trooper; Brian T.
White, New York State Trooper,
Defendants-Appellees,
Gerald Spencer, Defendant.
 No. 1131, Docket 93-7831.
 United States Court of Appeals,
Second Circuit.
 Argued March 8, 1994.
Decided June 10, 1994.
 
 Lewis B. Oliver, Jr., Albany, NY (Oliver & Oliver, Harriet B. Oliver, on the brief), for plaintiff-appellant.
 Andrea Oser, Asst. Atty. Gen., Albany, NY (Robert Abrams, Atty. Gen. of the State of N.Y., Peter H. Schiff, Deputy Sol. Gen., of counsel, Nancy A. Spiegel, Asst. Atty. Gen., on the brief), for defendants-appellees.
 Dianne M. Dillon, Springfield, MA (Dusel, Murphy, Fennell, Liquori & Powers), for defendant.
 Before: WALKER, JACOBS, Circuit Judges, and CARMAN*, Judge.
 JACOBS, Circuit Judge:
 
 
 1
 On February 20, 1988, New York State Troopers entered the home of Rosemary Bradway on the pretext of executing an arrest warrant for her ex-husband. The Troopers' objective was to find a wood stove and milk cans that had been stolen from a hunting camp. Upon discovering this cache, the Troopers arrested plaintiff for possessing stolen property and making a false written statement.
 
 
 2
 Following the dismissal of the criminal charges against her, plaintiff commenced an action pursuant to 42 U.S.C. Sec. 1983 alleging that her constitutional rights were violated because (i) the search of her home was unlawful in scope, and (ii) she was arrested without probable cause. A jury awarded plaintiff $100,000 in compensatory damages for her false arrest, but did not reach a general verdict as to whether the search of her home was unlawful. The United States District Court for the Northern District of New York (McAvoy, J.) denied plaintiff's request that the verdict form be resubmitted to the jury for a determination on this issue. The district court then granted the Troopers' motion for judgment as a matter of law on the ground of qualified immunity.
 
 
 3
 For the reasons set forth below, we affirm.
 
 BACKGROUND
 A. The Search
 
 4
 In July of 1987, Gerald Spencer and Charles Gardener reported that a wood stove and two steel milk cans had been stolen from their hunting camp. On February 2, 1988, New York State Trooper Susan McDonough received a tip from a man named Andrew Hughey that the stove was in the basement of 38 Tarborton Road, a house in West Sand Lake, New York, owned by plaintiff-appellant Rosemary Bradway. This information prompted an investigation of plaintiff, which revealed that the Rensselaer County Family Court had issued an outstanding arrest warrant based on the failure of her former husband, Earl Bradway, to provide child support.
 
 
 5
 On February 20, 1988, McDonough and fellow State Trooper Brian White met with Spencer and Gardener concerning the stolen milk cans and stove. At that meeting, Spencer and Gardener described a black, "Shenendowa"-brand stove with a dent on the back of the top lid roughly four inches long and with a crescent-shaped modification to the ashpan.
 
 
 6
 McDonough and White unsuccessfully sought out Andrew Hughey to obtain a supporting affidavit for a search warrant application. Without Hughey's affidavit, it was impossible to obtain a search warrant for 38 Tarborton Road. Nevertheless, the Troopers proceeded to the Bradway residence (with Spencer and Gardener in tow) in the hope that someone would consent to a search of the premises. In the alternative, McDonough was authorized to execute the arrest warrant for Earl Bradway.
 
 
 7
 When they arrived at 38 Tarborton Road, White and McDonough informed plaintiff of the dual purpose of their visit: they were searching for stolen property and attempting to execute the arrest warrant for Earl Bradway. In McDonough's presence, plaintiff signed a form consenting to a search. Once inside the house, the Troopers descended to the basement, where they found a wood stove and two steel milk cans fitting the descriptions provided by Spencer and Gardener. Spencer identified the stove and milk cans as the property stolen from his hunting camp.
 
 
 8
 The Troopers questioned plaintiff about the stove and the milk cans. She claimed that her ex-husband Earl had bought the stove two or three years before, and that she had owned the milk cans for almost twenty years. On the basis of these statements, the Troopers arrested plaintiff. She was escorted to the police station, where she gave a written statement that the "Shannandoah woodstove has been in my basement for two or three years." The statement also provided: "I was ... advised by the Troopers that two milk cans--one small one with green paint--with the words TEEHANS DYES and another 3FT size can with the words Dairyman League are stolen property. I have had these milk cans for twenty one years." Plaintiff was charged with possessing stolen property in violation of New York State Penal Law Sec. 165.40, and with making a false written statement in violation of New York State Penal Law Sec. 210.45. The criminal charges were dismissed on October 11, 1989, pursuant to an adjournment in contemplation of dismissal.
 
 B. The Proceedings Below
 
 9
 On February 8, 1991, plaintiff commenced an action in the Northern District of New York pursuant to 42 U.S.C. Sec. 1983, alleging violations of her constitutional rights and seeking damages. Specifically, she claimed that (i) the seizure of the wood stove was accomplished by means of a warrantless and non-consensual search (the "unlawful search claim") and (ii) her arrest was not supported by probable cause (the "false arrest claim").
 
 
 10
 Conflicting accounts were presented at trial concerning what transpired at the Bradway residence on February 20, 1988. McDonough testified that plaintiff voluntarily signed the consent to search form. Plaintiff, however, testified that she consented only after she was threatened by the Troopers and told she would lose her children if she did not cooperate.
 
 
 11
 Witnesses also differed as to the scope of the search conducted in accordance with Earl Bradway's arrest warrant. Plaintiff testified that the Troopers searched drawers, wallets, and other places in which Earl Bradway could not have been concealed. The Troopers denied searching such places.
 
 
 12
 Finally, testimony conflicted as to when Spencer was summoned into the house to identify the stove and the milk cans. According to the Troopers, Spencer did not enter the house until after the stove was discovered. Plaintiff, however, testified that Spencer had entered the house with the Troopers when the search began.
 
 
 13
 Prior to the close of evidence, White and McDonough asserted qualified immunity and moved for judgment as a matter of law under Federal Rule of Civil Procedure 50. The district court reserved decision.
 
 
 14
 After the lengthy trial, the jury was given a verdict form with a series of written interrogatories. As to the unlawful search claim, the jury found (i) that plaintiff had not voluntarily consented to the search of her home, and (ii) that the Troopers reasonably believed that Earl Bradway was on the premises. The jury did not hand down a general verdict on the unlawful search claim, and was not asked to do so. As to the false arrest claim, the jury found that (i) the Troopers lacked probable cause to believe that plaintiff committed the offense of criminal possession of stolen property, and (ii) plaintiff was entitled to $100,000 in compensatory damages.
 
 
 15
 After the jury answered the interrogatories (but before the jury reconvened to consider punitive damages), plaintiff's counsel for the first time raised an objection to the verdict form. Although the verdict form asked if the Troopers had probable cause to believe that Earl Bradway was in the house, it did not ask if the scope of the search that the Troopers conducted exceeded that authorized by Earl Bradway's arrest warrant. Plaintiff's counsel claimed that this omission prevented the jury from rendering a verdict on plaintiff's unlawful search claim and asked that the jury be sent back for further deliberations. The district court denied the request, finding that any objections to the verdict form had been waived.
 
 
 16
 After the jury returned its verdict, the district court revisited the Troopers' motion to dismiss the complaint on the ground of qualified immunity. Before ruling on the motion, the district court entered findings of fact that (i) the execution of the arrest warrant for Earl Bradway was a pretext for conducting a search for the stolen property, and (ii) "Spencer was not brought into the premises until after the stove was located." The district court then determined that the Troopers were entitled to qualified immunity for both the search and the arrest, and thereupon dismissed the complaint in a decision dated May 4, 1993.
 
 
 17
 Plaintiff's motion for reconsideration was denied, and this appeal followed.
 
 DISCUSSION
 
 18
 Plaintiff claims the district court erred in (i) failing to resubmit the verdict form to the jury for a determination as to whether the search of the premises was properly confined in scope, and (ii) dismissing her unlawful search and false arrest claims on the ground of qualified immunity. We conclude that any objection to the verdict form was waived and that the Troopers are entitled to qualified immunity on the unconstitutional search and arrest claims.
 
 A. Objection to the Verdict Form
 
 19
 When the jury retired for deliberations, the district court submitted a verdict form that asked if the Troopers had probable cause to believe that Earl Bradway was at plaintiff's house on February 20, 1988, to which the jury answered in the affirmative. The verdict form did not, however, ask the jury if the Troopers exceeded the scope of the search authorized by Earl's arrest warrant by searching through drawers, wallets, and other compartments too small to contain Earl Bradway. After the jury responded to the verdict form interrogatories, plaintiff asked the district court to resubmit the verdict form to the jury for consideration of this issue. The district court refused, finding that plaintiff waived any objection she might have had to the verdict form.
 
 
 20
 The waiver analysis requires that we first determine whether that portion of the verdict form pertaining to the unlawful search claim asked for special verdicts under Rule 49(a) or a general verdict accompanied by written answers to interrogatories under Rule 49(b). The answer is critical to the waiver analysis because Rule 49(a) explicitly provides that, if in giving the verdict form to the jury "the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury." Fed.R.Civ.P. 49(a) (emphasis added). There is no counterpart waiver provision in Rule 49(b).
 
 
 21
 Federal Rule of Civil Procedure 49 provides for two different verdict forms. Under Rule 49(a), the court "may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact." Fed.R.Civ.P. 49(a). Rule 49(b), meanwhile, allows a court to "submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict." Fed.R.Civ.P. 49(b) (emphasis added). "The distinction between the two provisions is that under Rule 49(a) the jury answers primarily factual questions for the benefit of the trial court which then applies the law to those answers. Under Rule 49(b), the jury after being fully instructed answers the interrogatories, renders a general verdict and the trial court enters judgment on the jury's verdict." Lavoie v. Pacific Press & Shear Co., 975 F.2d 48, 53 (2d Cir.1992).
 
 
 22
 We are compelled to analyze the unlawful search segment of the verdict form under Rule 49(a). That is because, as conceded at oral argument, the verdict form did not solicit the one response essential to a Rule 49(b) verdict form--a general verdict. Unlike the false arrest portion of the verdict form, the unlawful search portion did not offer the jury "the ultimate choice normally called for by a general verdict--the defendant is liable to the plaintiff for a specified amount of damages, or the defendant is not liable to the plaintiff." Lavoie, 975 F.2d at 53.
 
 
 23
 Plaintiff argues that we cannot subject the verdict form to a Rule 49(a) analysis because the district court itself "believe[d] that the verdict form was one prepared and submitted to the jury pursuant to Rule 49(b)." We are unpersuaded. The district court's characterization of the verdict form may reference the false arrest portion of the verdict form, or may reference an earlier draft of the form, or may reflect a simple misstatement. In any event, it is perfectly apparent that the verdict form sought only special verdicts concerning the unlawful search claim. A general verdict was neither called for nor rendered. That being the case, we must treat the verdict form as one governed by Rule 49(a).
 
 
 24
 As noted earlier, failure to challenge the omission of an issue from a Rule 49(a) verdict form before the jury retires to deliberate constitutes a waiver of the right to a trial by jury on that issue. See Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). "As to an issue omitted ... the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict." Fed.R.Civ.P. 49(a). Since the district court did not make a finding concerning the scope of the search conducted pursuant to the arrest warrant for Earl Bradway, the entry of judgment in favor of the Troopers implies a finding that the scope of the search was lawful.
 
 B. Qualified Immunity
 
 25
 After the jury returned its verdict, the district court concluded that plaintiff's Sec. 1983 action against the Troopers was barred by the doctrine of qualified immunity, and therefore granted the Troopers' motion for judgment as a matter of law under Federal Rule of Civil Procedure 50. On appeal, plaintiff argues that the Troopers were not entitled to qualified immunity on either the unlawful search claim or the false arrest claim.
 
 
 26
 In ruling on a motion for judgment as a matter of law, "or in reviewing its grant or denial on appeal, a court must 'view the evidence in the light most favorable to the party against which the motion was made.' " Piesco v. Koch, 12 F.3d 332, 343 (2d Cir.1993) (quoting Fugazy, 983 F.2d at 361). "The court may conclude that the motion should be granted only if it can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party." Piesco, 12 F.3d at 343.
 
 
 27
 The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or "insofar as it was objectively reasonable for them to believe that their acts did not violate those rights," Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). The doctrine accommodates (on the one hand) the interest in protecting public officials "from undue interference with their duties and from potentially disabling threats of liability," Harlow, 457 U.S. at 806, 102 S.Ct. at 2732, and (on the other hand) the interests in "deterring public officials' unlawful actions and compensating victims of such conduct," Elder v. Holloway, --- U.S. ----, ---- - ----, 114 S.Ct. 1019, 1022-23, 127 L.Ed.2d 344 (1994).
 
 
 28
 "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting Harlow, 457 U.S. at 818-19, 102 S.Ct. at 2738). In determining whether a particular right was clearly established at the time an official acted, courts typically consider
 
 
 29
 (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.
 
 
 30
 Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). Nevertheless, "if, as a matter of constitutional law, the right in question does not exist presently, it is entirely superfluous to inquire into whether it appeared to exist at some earlier point." Francis v. Coughlin, 891 F.2d 43, 48 (2d Cir.1989).
 
 1. The Unlawful Search Claim
 
 31
 The district court found that (i) it was objectively reasonable for the Troopers to rely on the arrest warrant as a basis for entering and searching 38 Tarborton Road and (ii) a reasonable police officer would have believed that the plain view exception to the Fourth Amendment warrant requirement provided a lawful basis for seizing the wood stove and the milk cans. Plaintiff disputes this second finding, claiming that "in light of the legal rules that were 'clearly established' at the time" of the search, Anderson, 483 U.S. at 639, 107 S.Ct. at 3038, the plain view doctrine applied only to inadvertent discovery. See Coolidge v. New Hampshire, 403 U.S. 443, 469, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 (1971) ("the discovery of evidence in plain view must be inadvertent"). Since the district court found that the stove and the milk cans were the object of a deliberate search conducted under the pretext of executing the arrest warrant for Earl Bradway, they were not discovered inadvertently. Accordingly, plaintiff argues, it was not objectively reasonable for the Troopers to believe the plain view doctrine justified the seizure of the contraband.
 
 
 32
 The first step in our analysis "is to determine whether the alleged conduct violates any constitutionally protected right at all. Conduct that does not violate any constitutional right certainly does not violate a constitutional right that was 'clearly established' at the time the conduct occurred." Mozzochi v. Borden, 959 F.2d 1174, 1179 (2d Cir.1992); see also Francis, 891 F.2d at 48.
 
 
 33
 Under presently existing constitutional law, there is no "inadvertent discovery" limitation on the plain view doctrine. In Horton v. California, 496 U.S. 128, 129, 110 S.Ct. 2301, 2304, 110 L.Ed.2d 112 (1990), the Supreme Court stated that, "even though inadvertence is a characteristic of most legitimate 'plain view' seizures, it is not a necessary condition." "The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement." Id. at 138, 110 S.Ct. at 2309. It therefore cannot matter that the Troopers' finding of the wood stove and the milk cans was purposeful rather than inadvertent; under the law today, the seizure of the goods pursuant to the plain view doctrine does not amount to a constitutional violation.
 
 
 34
 Our analysis is not altered by the district court's finding that "the alleged search for Earl Bradway was a mere pretext for what was an otherwise unlawful search." In evaluating the legitimacy of police conduct under the Fourth Amendment, we look to objective circumstances rather than an officer's subjective motivation. See Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978) (subjective intent does not make Fourth Amendment action unconstitutional "as long as the circumstances, viewed objectively, justify that action"); see also United States v. Scopo, 19 F.3d 777, 784 (2d Cir.1994). As long as law enforcement officials "do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." United States v. Causey, 834 F.2d 1179, 1184 (5th Cir.1987) (en banc) (cited with approval in Scopo, 19 F.3d at 783). Here, the objective circumstances justified the plain view seizure of the wood stove and the milk cans. The arrest warrant for Earl Bradway provided the Troopers with a lawful (albeit pretextual) basis for searching 38 Tarborton Road. If that search was properly confined in scope, the ensuing seizure of contraband in plain view did not violate the Fourth Amendment. Having one valid ground for search, they needed no other. See Scopo, 19 F.3d at 784 (pretextual arrest will not invalidate an otherwise lawful search); see also, Mozzochi, 959 F.2d at 1179-80 (subjective intent insufficient to defeat an otherwise valid claim of qualified immunity); United States v. MacDonald, 916 F.2d 766, 771-72 (2d Cir.1990) (pretext of police irrelevant where conduct was lawful), cert. denied, 498 U.S. 1119, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991); but see Winters v. Bd. of County Comm'rs, 4 F.3d 848, 854 (10th Cir.1993) (police cannot rely on a pretextual administrative search coupled with the plain view doctrine to justify seizure of evidence from pawnshop), cert. denied, --- U.S. ----, 114 S.Ct. 1539, 128 L.Ed.2d 192 (1994).
 
 
 35
 Relying on the Supreme Court's decision in Coolidge, plaintiff argues that, irrespective of what the law may be today, the Troopers' plain view seizure was clearly unconstitutional under the law as it existed in February 1988. Justice Stewart's plurality opinion in Coolidge did indeed state that inadvertent discovery is a prerequisite to the application of the plain view doctrine. However, the portion of Justice Stewart's opinion that grafted an inadvertence requirement onto the plain view doctrine was joined by only three other members of the Court. Justice Harlan concurred in the judgment but declined to acknowledge the inadvertence requirement, and the remaining four justices expressly disagreed with Justice Stewart on this issue. After Coolidge but before the February 1988 search of 38 Tarborton Road, the Supreme Court issued Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). In that case, Justice White's concurrence expressly questioned whether inadvertence was integral to the plain view doctrine: "This 'requirement' of the plain-view doctrine has never been accepted by a judgment supported by a majority of this Court." Hicks, 480 U.S. at 330, 107 S.Ct. at 1155 (White, J., concurring). We therefore cannot say that inadvertence was a clearly established element of the plain view doctrine when the Troopers seized the wood stove and the milk cans on February 20, 1988. This conclusion is buttressed by the fact that when the Court expressly foreclosed an inadvertence requirement in Horton, it did so without overruling Coolidge.
 
 
 36
 Even apart from the matter of inadvertence, plaintiff claims that the Troopers are not protected by the plain view doctrine because (i) the search conducted pursuant to the arrest warrant for Earl Bradway was not properly confined in area and duration, and (ii) the incriminating nature of the stove was not immediately apparent. These contentions are unsupported by the record.
 
 
 37
 To justify a warrantless seizure under the plain view doctrine, the officer must "be lawfully located in a place from which the object can be plainly seen." Horton, 496 U.S. at 136, 110 S.Ct. at 2308. "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." Id. at 140, 110 S.Ct. at 2310. Here, the jury (having not been asked) did not say whether the scope of the search for Earl Bradway exceeded that permitted by the arrest warrant, and the district court made no finding to that effect. As such, the district court "shall be deemed to have made a finding in accord with the judgment." Fed.R.Civ.P. 49(a). The district court's decision granting the Troopers' motion for judgment as a matter of law on the issue of qualified immunity therefore implies a finding that the search for Earl Bradway was lawful in scope.
 
 
 38
 Another necessary precondition to a lawful plain view seizure is that the incriminating character of the goods be immediately apparent. Horton, 496 U.S. at 136, 110 S.Ct. at 2308. Plaintiff argues that this precondition was never satisfied because the Troopers pulled out the ashpan of the stove to observe the distinctive crescent shape before seizing the stove itself. If it was indeed necessary to view the ashpan to identify the stove, then the plain view doctrine would be inapplicable under the Supreme Court's decision in Arizona v. Hicks, 480 U.S. at 328, 107 S.Ct. at 1154 (officers not authorized to move stereo equipment so as to view serial numbers without probable cause to believe that the equipment was stolen). That, however, is not the case. In their meeting with the Troopers, Spencer and Gardener described a black, Shenendowa-brand stove with a dent on the back of the top lid roughly four inches long. These immediately apparent features, in and of themselves, sufficed to establish the incriminating character of the stove. See United States v. Bonfiglio, 713 F.2d 932, 936 (2d Cir.1983) ("[I]t is not a prerequisite for a legal seizure under the plain view doctrine that at the time of the search the officers know with certainty that the seized item is evidence of a crime."). Once the Troopers identified the stove by some distinctive markings, the plain view doctrine did not inhibit their opening the ashpan to conduct a further examination. Hicks, 480 U.S. at 326, 107 S.Ct. at 1153 ("It would be absurd to say that an object could lawfully be seized and taken from the premises, but could not be moved for closer examination.").
 
 
 39
 Therefore, the district court did not clearly err in finding that a reasonable police officer would have believed that the seizure of the stove was justified under the plain view doctrine.
 
 2. The False Arrest Claim
 
 40
 The next question is whether the Troopers are entitled to qualified immunity for the February 20, 1988 arrest of plaintiff. The jury found that the Troopers lacked probable cause to believe that plaintiff committed the offense of criminal possession of stolen property. Nevertheless, the district court recognized that "the question of immunity is distinct from the question of probable cause," and that "[a] finding by the court that a defendant is entitled to qualified immunity is legally consistent with a finding that probable cause did not exist for the arrest." The district court then found that it was objectively reasonable for an officer to believe that probable cause existed for the arrest.
 
 
 41
 In its qualified immunity analysis, the district court relied on (i) the presence of the wood stove and the milk cans in the basement of 38 Tarborton Road, and (ii) plaintiff's improbable statements concerning how long those items had been in her possession. In this context, plaintiff again urges that, under the law as it existed in 1988, the seizure of the stove and the milk cans did not comport with the plain view doctrine. Without this contraband, plaintiff continues, the officers did not have sufficient evidence to provide probable cause for her arrest.
 
 
 42
 As discussed above, the unlawful search claim is nonviable because, considered in light of the law today concerning the plain view doctrine, the search did not violate plaintiff's constitutional rights. On the false arrest claim, however, plaintiff is not asserting a violation of her right to be free from plain view seizures resulting from pretextual searches. Instead, she asserts her right to be free from arrest without probable cause, a right she clearly enjoys under presently existing law. See Golino, 950 F.2d at 870 ("The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right."). And as to her undoubted right to be free from arrest, she argues that a search and seizure that was improper when it was conducted cannot furnish probable cause.
 
 
 43
 In this way, plaintiff's false arrest claim introduces her unlawful search claim through the back door. Since the alleged conduct (arrest without probable cause) does violate a constitutional right, plaintiff urges us to scrutinize all of the acts giving rise to probable cause (including the seizure of the stove and the milk cans) under pre-existing law. See Anderson, 483 U.S. at 639, 107 S.Ct. at 3038 (conduct must be "assessed in light of the legal rules that were 'clearly established' at the time it was taken.").
 
 
 44
 Under plaintiff's analysis, an officer could be entitled to qualified immunity for a seizure yet nevertheless be liable for an arrest resulting from that seizure. That approach, however, advances none of the competing goals served by the qualified immunity doctrine. Holding the Troopers liable for an arrest deemed objectively unreasonable because it is based on a seizure that in retrospect was arguably constitutional would not adequately insulate public officials from "undue interference with their duties and from potentially disabling threats of liability." Harlow, 457 U.S. at 808, 102 S.Ct. at 2733. Nor would such liability deter unlawful actions, since the action complained of--here, a plain view seizure effected through a pretextual search--will have become lawful. Finally, a recovery by plaintiff would not compensate a "victim" of an "unlawful action", since we now understand that the action was not in fact unlawful. See Elder, --- U.S. at ---- - ----, 114 S.Ct. at 1022-23. Accordingly, we hold that because the Troopers are entitled to qualified immunity for the seizure, that seizure cannot form the basis of a false arrest claim under Sec. 1983, irrespective of pre-existing law.
 
 
 45
 Even if we were to view the seizure under the law as it existed in 1988, the Troopers would nevertheless be entitled to qualified immunity on the false arrest claim. As noted above, the Supreme Court had not clearly established inadvertence as a necessary element of a lawful plain view seizure. Therefore, a reasonable officer could have believed that the plain view doctrine provided a lawful basis for seizing the wood stove and the milk cans. A reasonable officer who found the stove and cans, and who heard plaintiff's implausible explanation for possessing them, would have believed that probable cause existed for plaintiff's arrest.
 
 CONCLUSION
 
 46
 For the foregoing reasons, the decision of the district court granting appellees judgment as a matter of law on the ground of qualified immunity is affirmed.
 
 
 
 *
 Honorable Gregory W. Carman of the United States Court of International Trade, sitting by designation